James Dwayne ALLEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 560–90.

Court of Criminal Appeals of Texas, En Banc.

Oct. 14, 1992.

Lenda R. Bush, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall and David K. Chapman, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant waived his right to a jury trial and, on April 22, 1988, pled guilty to burglary of a habitation. TEX.PENAL CODE ANN. § 30.02(a)(1). The trial court, pursuant to a plea bargain agreement assessed appellant's punishment at seven years' confinement in the Texas Department of Corrections [1], probated for seven years. Three months later, the State filed a motion to revoke appellant's probation.

In the motion, the State alleged appellant violated the first condition of his probation by committing the felony offense of possession of a controlled substance, to wit, amphetamine. TEX.HEALTH & SAFETY CODE ANN. § 481.103(a)(3), and § 481.-116(b). Five months later, the State filed its first amended motion to revoke appellant's probation. It contained the allegation set out in the original motion to revoke and added an allegation that appellant committed an aggravated assault while on probation. TEX.PENAL CODE ANN. § 22.-02(a)(4).

Appellant pled not true to the allegations in the State's motion to revoke his probation. After a hearing on the motion in February, 1989, the trial court found appellant violated his probation by possessing amphetamines. The trial court made no finding on the aggravated assault allegation. The trial court revoked appellant's probation on the ground that appellant committed an offense while on probation, as alleged in the first amended motion to revoke probation. The trial court assessed appellant's punishment at five years' confinement.

On direct appeal, the Court of Appeals decided the evidence was insufficient to establish that appellant possessed amphetamine. The Court of Appeals reversed the conviction and ordered appellant's probation to be reinstated. *Allen v. State*, 786 S.W.2d 738, at 739–740 (Tex.App.—Fort Worth 1989). On rehearing, the Court of Appeals reiterated that the evidence was insufficient to support the trial court's judgment. However, they reversed themselves and remanded the instant cause to the trial court for further proceedings. *Allen v. State*, 786 S.W.2d, at 740–741.

In its petition for review, the State requested this Court to reverse the Court of Appeals' decision that there was insufficient evidence to revoke appellant's probation. Although review was granted on five of the grounds for review presented by the State in its petition, this Court now finds that its decision to grant review was improvident. TEX.R.APP.P. 202(k). See, also, *Arcila v. State*, 834 S.W.2d 357 (Tex. Cr.App.1992). This decision does not constitute an endorsement or adoption of the reasoning employed by the Court of Appeals. *Sheffield v. State*, 650 S.W.2d 813 (Tex.Cr.App.1983).

The State's petition for discretionary review is dismissed.

OVERSTREET, J., dissents.

CLINTON, Judge, dissenting.

This cause began as an ordinary revocation of probation matter, but has since become a forum for competitive semantical exercises in articulating and applying the

---

[1]. Now, the Texas Department of Criminal Justice, Institutional Division.

proper standard for review of an order revoking probation. *Allen v. State*, 786 S.W.2d 738 (Tex.App.—Fort Worth 1989).[1] The bout below was between counsel who must have pretermitted consulting precedents of earlier germane cases—on the one hand, advancing what is hoped will be a "white horse case;" on the other, ultimately seeking to create a new rule to curtail appellate review.

## I

For present purposes, in my view *Wiersing v. State*, 571 S.W.2d 188 (Tex.Cr.App. 1978), is dispositive, *viz:*

"A revocation of probation must be supported by a *preponderance of the evidence*. *Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1974); *Kelly v. State*, 483 S.W.2d 467 (Tex.Cr.App.1972). Regardless of the burden of proof, in a case such as the one before us, the defendant must be *affirmatively linked* to the contraband in a fashion which supports a reasonable inference that he *knew* he was in possession of the contraband. [Citations omitted].

\* \* \* \* \* \*

Thus, we conclude that upon these facts the State has failed to prove by a *preponderance of the evidence* that ap-

pellant was in possession of marihuana. Therefore, the trial court *abused its discretion* in revoking appellant's probation on this ground.

The judgment is reversed."

*Id.*, at 190–191. *Accord: Naquin v. State*, 607 S.W.2d 583 (Tex.Cr.App.1980). See, e.g., *Martin v. State*, 623 S.W.2d 391, at 393, n. 5 (Tex.Cr.App.1981); *Caddell v. State*, 605 S.W.2d 275, at 277 (Tex.Cr.App. 1980). On those authorities, without further discussion we could affirm the judgment of the Fort Worth Court of Appeals under our review policy recently enunciated in *Arcila v. State*, 834 S.W.2d 357 (Tex. Cr.App.1992).

## II

The majority, however, summarily dismisses the five questions presented for review, yet cautions that its "decision" is not to be considered "an endorsement or adoption of the reasoning employed by the Court of Appeals." Opinion, at 8. In my opinion we should affirm the judgment of the Court of Appeals. Because the majority is disposed to abandon further review of a cause the parties have fully briefed and argued, I propose to take a close look at germane developments leading the Court this far.[2]

---

1. Actually the competition may have been initiated in the trial court. As counsel for appellant urged the court that evidence was insufficient to revoke probation, in that there were not sufficient affirmative links to connect appellant to the baggies of amphetamine, so "there is just as much evidence to show that it was possessed by [the passenger]," counsel alluded to "Humerson"—*Humason v. State*, 728 S.W.2d 363, at 367 (Tex.Cr.App.1987) (insufficient evidence to prove knowing possession of cocaine and thus *"guilty beyond a reasonable doubt"*).

   Immediately rejecting the argument, the trial judge pronounced that the court found *"beyond a reasonable doubt* [appellant] violated [his] probation in possessing amphetamines [sic]."
   S.F. at 47.

   In support of his sole point of error, appellant elaborated on the same argument, relying exclusively on *Humason v. State*, supra. Appellant's Original Brief on Appeal, at 1, 7–10. The State replied with three prongs:
   1. "The standard in a probation revocation is *not* proof beyond a reasonable doubt, but proof by a *preponderance of the evidence.*"
   2. "A defendant's version of the facts can be disregarded by the trial court."

3. "The evidence is sufficient."
State's Brief, at 3. (All emphasis here and throughout this opinion is mine unless otherwise indicated.)

2. To aid readers to identify strawmen erected and thrashed here, the following is reproduced from the State's Brief on the Merits:

   "In summary, the State respectfully suggests that the court of appeals amalgamated several different standards for reviewing the adequacy of the evidence in this probation case. It purported to take some of its analysis from *Jackson v. Virginia*, but did not succeed in doing so because it relied upon the reasonable-hypothesis-of-innocence/affirmative link analysis discussed above, and because it also appears to have drawn upon the kind of weight and preponderance analysis set out in *Meraz [v. State*, 785 S.W.2d 146 (Tex.Cr.App. 1990)] and *Pool* (however unconsciously it may have done so). Because the court confused these various approaches to evidentiary analysis and fused them into a single method of analysis, the greatest effect of the lower court's opinion was to substitute its judgment

### A

After reviewing the facts leading to its finding that "the trial court abused its discretion" in revoking probation, the court of appeals opined, "There is *no evidence* to show that [appellant] was aware the amphetamine was there." It signaled *"See Humason v. State,* 728 S.W.2d 363, 367 (Tex.Cr.App.1987)," found the evidence insufficient, all the while recognizing that "in a revocation hearing, the burden of proof is by a preponderance of the evidence." *Allen,* at 740. The court rejected counter arguments by the State that *affirmative links* were shown in that amphetamine is "an expensive drug," so it is *"unlikely* [that] some other owner [would have left the drug]," State's Brief, at 8.[3] The court pointed out the amphetamine was hidden in a container, which in turn was hidden under the armrest in the front seat, so it was *not unlikely* that either appellant's father or the passenger seated next to the armrest left the amphetamine where the officer found it. Accordingly, it rendered judgment reversing and setting aside the order revoking probation, *et cetera. Ibid.*

of the weight of the testimony for that of the trial judge. As the State has shown, this is precisely what the court of appeals should not have done. Instead, it should have viewed the evidence in the light most favorable to the trial's court finding and concluded that the evidence was sufficient to satisfy a rational fact-finder by a preponderance of the evidence. This is the only proper test, and the Court should so hold. In so holding, the Court should affirmatively reject appellate review that relies on a reasonable hypothesis of innocence or the necessity of an affirmative link between the Defendant and the contraband. It should also reject an approach that allows the court of appeals to evaluate the great weight and preponderance of the evidence."
*Id.,* at 23–24.

Accordingly, the State urged that the judgment of the court of appeals be reversed and that of the trial court affirmed. Alternatively, "the judgment should be reversed with instructions to the court of appeals to apply a proper sufficiency analysis, one which relies on *Jackson v. Virginia* and repudiates any standards of review that rely on a reasonable-hypothesis-of-innocence or affirmative link theories." *Id.,* at 25.

3. The State's expert chemist testified that the smaller baggies containing "powder with am-

### B

The State reacted with much vigor in a bombastic motion for rehearing, variously charging the court of appeals for "reweighing the facts and redetermining the credibility of the witnesses," Ground One; "failing to examine the evidence in the light most favorable to the finding of the trial court," Ground Two; "reviewing the evidence under the 'just as likely' method of review [in that such is] tantamount to applying the reasonable doubt standard," Ground Three; "relying on the holding in *Humason v. State* [supra]," Ground Four, and an unrelated Ground Five. State's Motion for Rehearing at 1–2.

The court of appeals conceded Ground Five.

Taking the gravamen of the State's complaints to be that "we did not follow the proper standard for review and that we did not construe the evidence in a manner favorable to the trial court's findings," the court of appeals proceeded to address the latter, and in effect qualified a portion of the presentation of facts to which the State objected. *Id.,* at 740.[4] The court next con-

phetamine" weighed "0.13 grams," "0.13 grams" and "0.08 grams," respectively—a total of 0.34 grams.

4. Although on original submission the State itself accepted testimony of appellant that the passenger "had drugs on his person," State's Brief, at 7, on rehearing another appellate attorney for the State criticized the court for including its factual account of certain circumstances surrounding the offense the State believed was derived from testimony of appellant.

"This court has included in its summary of the facts the Appellant's version of the facts as if his story could be relied upon in assessing the sufficiency of the evidence. But this is a violation of the holdings ... that the appellate court may *not* go behind the trial court's judgment of the credibility of the witnesses.

Yet that is what the Court has done here. It has assumed the veracity of Appellant's testimony when it says that Appellant had borrowed the car to move some belongings of his passenger.... [Those 'facts'] are nothing more than part of the story of Appellant, and they do not support the findings made by the trial court, so this Court is required to disregard them in making its sufficiency determination."
Motion, at 3–4.

sidered the State's claim that it had not followed the proper standard for review, and iterated the "preponderance of evidence" test. It again alluded to the "affirmative link" requirement (that the State had unsuccessfully attempted to satisfy on original submission), and concluded:

"... The issue, then, is whether the evidence is also insufficient, *in the absence of an affirmative link*, to support a revocation of probation where the burden of proof is by a preponderance of the evidence. We hold that such evidence is insufficient *in the absence of an affirmative link* between the accused and the contraband from which the finder of fact may reasonably infer the accused's *knowledge of the presence of the contraband*."

*Id.*, at 741.

It then examined the State's complaint that a "just as likely" analysis (the correlation of which the State itself initiated on original submission) is available only when evaluating sufficiency to support a conviction on circumstantial evidence where the burden of proof is beyond a reasonable doubt. State's Motion for Rehearing, at 4–5.[5] It is in this connection that the court of appeals used the language the State finds objectionable.

By definition "preponderance of the evidence" means "the greater weight of credible testimony." *Superior Lloyds of America v. Foxworth*, 178 S.W.2d 724 (Tex.Civ. App.—Amarillo 1944) writ refused, want of merit.[6] Therefore the Fort Worth Court reasoned:

"... It follows that the State is required to establish Allen's guilt by the greater weight and degree of credible testimony. If, when considering the credible testimony, it is just as likely that someone other than Allen is guilty, the State has failed to show Allens' guilt by the greater weight and degree of credible testimony. We therefore do not find that the use of

---

The Fort Worth Court explained, "These facts were not disputed in the State's brief, and we did not and do not consider them as particularly important in our analysis." Nevertheless, "we will not consider those facts to have been established." *Id.*, at 40.

While the court thus accommodated the State, in my judgment a fair and reasonable factfinder should consider those *undisputed* facts in deciding sufficiency of the evidence, and the court of appeals *would be justified in reviewing them to* determine whether those and other facts affirmatively linked appellant to the amphetamine, such as to "support[ ] a reasonable inference that he knew he was in possession of the contraband." *Wiersing v. State*, supra, at 190–191.

The State itself proved affirmatively that the car appellant was driving was owned by and registered to his father, and had not been reported stolen. S.F. 16. That fact is consistent with appellant's testimony that he had borrowed the car from his father. The officer testified that he conducted an "inventory search," and agreed he saw "a bunch of stuff in the car"—"several boxes in the back seat containing clothes and other personal items"—"that would indicate that somebody was moving;" he could not "recall" whether the passenger told him "they were his." S.F. 12–13. Appellant testified he and the passenger were moving "stuff" belonging to the latter from two locations to another. A second officer at the scene who prepared the "impoundment sheet" was not called to testify.

That the factfinder might have disbelieved portions of appellant's undisputed testimony "cannot be taken as evidence that the [amphet-amine] belonged to appellant, in light of the fact [one] other person[ ] [was] in the car and did not disclaim ownership of the contraband at trial [nor did the father from whom appellant had borrowed the car]." See and cf. *Wiersing*, supra, at 191.

5. In the State's view, where the burden is proof "by a preponderance of evidence" the method of review is "to look at the evidence most favorable to the finding of the fact-finder, then determine if any rational trier of fact could have found that the State proved the elements of its allegations by a preponderance of the evidence." It invites the reader to *"See and compare Arnold v. State*, 719 S.W.2d 590, 592–593 (Tex.Cr.App. 1985); *Van Guilder v. State*, 709 S.W.2d 178, 181 (Tex.Cr.App.1985)"—both of which were expressly disavowed by this Court in particular context of an affirmative defense and in general context of any other fact issue on which an accused bears such burden of proof. *Meraz v. State*, 785 S.W.2d 146, at 155 (Tex.Cr.App.1990).

6. In *Superior Lloyds v. Foxworth*, supra, the Amarillo Court explained, "The terms 'weight' and 'degree' are used synonymously by the courts, both referring to the preponderance of the evidence. [citations omitted]." Accordingly, to use the terms disjunctively in a jury charge is not error. *Id.*, at 725–726. Therefore, the definition need not include both terms, although traditionally that is done, just as the court of appeals did in this cause. *Allen*, at 741.

that language is inappropriate in an analysis of the evidence when the burden of proof is by a preponderance of the evidence.... Therefore, the fact that it has been used in those cases [in which the burden of proof is beyond reasonable doubt] does not mean that it is inappropriate in a case where the burden of proof is by a preponderance of the evidence."

*Id.,* at 741. Accordingly the court of appeals overruled the grounds in the motion dealing with its sufficiency analysis. *Ibid.*

### C

Still dissatisfied, the State filed a second motion for rehearing; the court of appeals summarily overruled the motion with a written order specifying that "the opinion and judgment [on motion for rehearing] stand unchanged." [7]

### III

In its petition for discretionary review, the State reprises more its grounds for *second* motion for rehearing than grounds ruled on in its first. Compare note 6 with p. 10, *ante.* Thus the former claims were not properly preserved for discretionary review and never should have been granted. The majority would cure its own miscue by declaring that all five grounds were improvidently granted, and dismisses the petition for discretionary review.

### A

The fifth question for review, that the court of appeals erred in relying on "civil case law," is frivolous on its face. The only civil law "relied on" by the court of appeals is a stock definition of "preponderance of the evidence" that is commonly utilized on both the civil side and, ever since the Court found a need "to assure uniformity of decisions, and to furnish guidance for trial courts," on the criminal side. *Scamardo v. State,* 517 S.W.2d 293, at 298 (Tex.Cr.App.1975), and its numerous followings collected in 25 Tex.Jur.3d *Criminal Law* § 3822, at 856, n. 14. To suggest this question needs answering AGAIN by this Court is specious, and the majority now acknowledges as much in its opinion at 8.

### B

In its brief the State flatly asserts what it believes is the "test [to] be applied," *viz:*

"Thus, in a probation revocation case where an offense is relied on revocation, the following test should be applied: Whether, viewing the evidence in the light most favorable to the trial court's finding, any rational trier of fact could have found every element of the crime *to* be proved by a preponderance of the evidence."

State's Brief on the Merits, at 15–16.[8] Accordingly, the State must also deny applica-

---

7. The motion presents five grounds, *viz:*
   1. The Court's prior opinions conflict with the holdings in *Jackson v. Virginia,* 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979).
   2. The Court of Appeals erred by evaluating the sufficiency of the evidence by asking whether it was just as likely that someone other than appellant was guilty of the offense.
   3. The Court of Appeals should [have] decided whether the holding in *Meraz v. State,* [785 S.W.2d 146 (Tex.Cr.App.1990) ] applies to appeals of probation revocation.
      A. *Meraz* is not applicable to probation revocations.
      B. If *Meraz* applies to probation revocations, the Court of Appeals has failed to follow the guidelines set out in *Meraz.*
   4. The Court of Appeals erred by Relying on *Davenport v. Cabell's Inc.,* 239 S.W.2d 833 (Tex.Civ.App.—Texarkana 1951, no writ.
   5. The evidence was clearly sufficient to support the order revoking probation.

8. The State justifies its proposed test under the frank heading: *"II. JACKSON V. VIRGINIA AND SUFFICIENCY REVIEW IN PROBATION REVOCATION CASES,* in a lengthy elaborative context, *viz:*

   "As the State has argued in cases such as *Geesa* [*v. State,* 820 S.W.2d 154 (Tex.Cr.App. 1991) ] and *McCarty, [v. State,* 820 S.W.2d 795 (Tex.Cr.App.1991) ], *legal* insufficiency in a criminal case—that which results in an acquittal or its equivalent [footnote omitted]—should not be judged by the reasonable-hypothesis-of-innocence standard. The only issue should be whether *any* trier of fact could have found the facts as required by the verdict or judgment. It should not matter that some other, equally rational, trier of fact could have come to the opposite conclusion, as long as the verdict or finding is a rational one. See Appendix [State's Brief in *McCarty* ].

   The appellate court should not examine the record and its imagination for possible ver-

bility of the "greater weight of the credible evidence" test for the "preponderance of evidence" standard in a revocation proceeding, and it does, *viz:*

"The State urges that this is not a proper function of an appellate court when it is reviewing the *legal sufficiency* of the evidence in a criminal case. In criminal cases, a review of the *legal sufficiency* of the evidence affirmatively *excludes* any reweighing of credibility choices by the appellate court; even inadmissible evidence is considered a part of the process of review. [citation omitted].

So the credibility of the witnesses has no place in the review of *legal sufficiency*. The Court should so hold."

*Id.,* at 16–17 (emphasis of "excludes" in original). True as such urging may be where the issue is "legal sufficiency" of evidence to support a judgment of conviction, the issue in a proceeding to revoke probation is "preponderance of the evidence," tested by the "greater weight of the credible evidence,"—in other words, "factual sufficiency." That the State is well aware of the differences in standards is shown by its last statement preceding its prayer of relief: *"[The Court] should also reject an approach that allows the court of appeals to evaluate the great weight and preponderance of the evidence." Id.,* at 24.

Patently, the State absolutely abjures the "preponderance of evidence" standard, tested by "the greater weight of the credi-

ble evidence," and urges this Court to reject it as well. We should make it clear that the Court will not.

In the first place, on original submission the court of appeals found, "There is *no evidence* to show that appellant was aware the amphetamine was there." *Id.,* at 740. By "there" is meant in a closed film canister, hidden under the armrest, containing one large baggie in which were three smaller baggies of amphetamine. *Ibid.* There is no indication that on rehearing the court receded from that finding while evaluating complaints "dealing with our analysis of sufficiency of the evidence." *Id.,* at 741.

Secondly, unless the we are is now prepared to disavow authoritative decisions of the Court cited *ante* at 8, we are constrained to view the *opinions of the court of appeals* in their light. Together they state the operative propositions in a revocation case: A trial court possesses less than absolute discretion in the decision to revoke probation; its discretion must be informed and its evidentiary findings must be supported by "sufficient evidence," that is by a "preponderance of the evidence," tested by "the greater weight of the credible evidence" or "testimony" (where it is the only relevant evidence); when upon reviewing the record an appellate court determines by those terms that the evidence is insufficient to support the order to revoke, it

---

sions of the facts *inconsistent* with the guilt of the Defendant, or with the finding of a violation of probation. The court should instead do just the opposite, as required by *Jackson.* The court should not seek out a reason why the fact-finder might have been wrong in evaluating the facts; it should look for just grounds for saying the fact-finder was right.

[Textural material quoted in the body above omitted]. The appellate court should *not* inquire whether it is just as likely that someone other than the Defendant committed the offense, because this allows the appellate court to substitute its construction of the facts for that of the fact-finder. And this latter approach is the precise equivalent of asking whether the evidence supports an inference of guilt other than the guilt of the Defendant.

But if the appellate court finds the evidence insufficient because there is an inference equally persuasive as the Defendant's guilt, it

is saying that *every* rational fact-finder must necessarily agree with the conclusion that the defendant is guilty (here, by a preponderance of the evidence) before the revocation can be upheld. This is clearly contrary to *Jackson,* which demands far less. . . .

Questions of *legal* insufficiency should be evaluated in accord with the standards set out in *Jackson v. Virginia:* [paraphrasing its familiar passage]. And this is so regardless of whether there is an outstanding hypothesis of innocence in a circumstantial evidence case." State's Brief on the Merits, at 15–16 (all emphasis in original).

The short answer to that formulation is in *Jackson v. Virginia* the burden of proof is "beyond a reasonable doubt," whereas the burden in revocation cases in Texas is "a preponderance of the evidence," so an appellate court is obliged to determine "the *greater weight* of credible evidence."

follows that the trial court abused its discretion.

Of course, the appellate court is not to assess "credibility" of "basic facts" elicited at the revocation hearing from testimony and evidence presented by witnesses or, as sometimes pejoratively put, to serve as "thirteenth juror." The role of an appellate court is to review an "ultimate fact," the ultimate finding that is a conclusion of law or a determination of a mixed question of law and fact. See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, at 491, 57 S.Ct. 569, at 573–574, 81 L.Ed. 755, at 762 (1937). Review of the ultimate finding is proper where there is insufficient evidence measured by the appropriate standard to sustain requirements of precedent upon which the ultimate fact is based. In conducting that review the appellate court ordinarily accepts basic facts found below upon presumed credibility findings to determine whether under guiding law they sufficiently support the ultimate finding. See Aldisert, *The Judical Process* (West Pub. Co. American Casebook Series 1976) 693–694. In this cause the evidence producing the basic facts recounted by the court of appeals is essentially undisputed; measured by the preponderance of the evidence standard, the court determined those basic facts are insufficient to sustain the ultimate finding of the trial court.

Thirdly, for this Court to say that courts of appeals may not decide sufficiency of evidence in a probation revocation case by the requisite preponderance test is to deny those courts the constitutional power granted by Article V, § 6, to determine conclusively "all questions of fact brought before them on appeal[.]" See generally *Meraz v. State*, 785 S.W.2d 146, at 149–154 (Tex.Cr.App.1990); *Combs v. State*, 643 S.W.2d 709, at 714–716 (Tex.Cr.App.1982); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, at 648–649 (Tex.1988); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); see also, e.g., *Roberson v. Robinson*, 768 S.W.2d 280 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980).

In my view, the Fort Worth Court of Appeals was fully authorized and properly exercised its power to determine whether the basic facts presumably found by the trial court preponderate in favor of the order to revoke; it is empowered to "consider and weigh all of the evidence."[9]

When the State objected to portions of its recitation of undisputed facts, the court receded.

When the State then scolded the court for not following what the State believed (erroneously) was the proper standard—the State urged the discredited *Van Guilder* formulation—the court adhered to the correct "preponderance test;" from our own precedents the court held evidence is insufficient "in the absence of an affirmative link between the accused and the contraband from which the finder of fact may reasonably infer the accused's knowledge of the presence of the contraband."

When the State chastised the court of appeals for saying from the undisputed

---

9. In its seminal opinion, *In re King's Estate*, supra, the Supreme Court explained the appellate role of the Court of [Civil] Appeals, *viz:*

"... [Article 5, § 6] requires the Court of Civil Appeals, upon proper assignment, to consider the fact question of weight and preponderance of all the evidence and to order a new trial accordingly[.] This is the meaning given the constitutional phrase 'all questions of fact brought before them on appeal or error' of Sec. 6, supra. *But for that interpretation there would be no 'questions of fact' for the Court of Civil Appeals to determine[.]*"

*Id.,* 244 S.W.2d at 662. Furthermore, the Supreme Court reversed the judgment of the Court of Civil Appeals because it applied to the evidence an erroneous legal proposition, *viz:*

"If there is any evidence of probative value to support this finding of the jury, such finding is conclusive and binding on both the trial court and this court."

That rule, like the rule that the reviewing court looks only to the evidence favorable to the verdict, the Supreme Court said, applies only to "the question of whether the evidence as a *matter of law* requires a conclusion contrary to the verdict," whereas the question under consideration is "*one of fact.*" And as to the latter, "[t]he evidence supporting the verdict is to be weighed along with the other evidence in the case, *including that which is contrary to the verdict.*" *Id.,* at 661. *Accord: Hall v. Villarreal Development Corp.,* 522 S.W.2d 195, 196 (1975) (*In re King's Estate* standard equally applicable to finding of fact by trial court).

evidence supplied by the arresting officer himself that "it was not altogether unlikely" that either appellant's father or his passenger left the film canister with its contents where the officer found it, in my judgment the court, which had already twice found the evidence *insufficient* to establish an *affirmative link* between appellant and the amphetamine, could have merely reminded the State of that finding, and pretermitted any further discussion of such an extraneous matter. Whether its responsive discourse about appropriateness of a "just as likely" assessment of circumstantial evidence is deemed to be right or wrong, ultimately the court really did or said little else than what this Court itself has done and stated where the State failed to produce a preponderance of evidence against an appealing probationer. See, e.g., *Wiersing v. State*, supra, at 190–191; *Naquin v. State*, supra, at 586; and their respective followings.[10]

## IV

For all those reasons amply supported by "uniformity of decisions" engendered by the guiding opinion in *Scamardo v. State*, supra, and its followings, consistent with our *Arcila* review policy, I would affirm the judgment of the Fort Worth Court of Appeals.[11] Because the majority does not, I must stoutly resist yet another belated

---

**10.** In its first motion for rehearing and in all papers since, the State seeks to advance its campaign to require appellate courts to conduct review of all cases regardless of applicable degree of standards of proof according to its understanding of *Jackson v. Virginia*. Indeed, it incorporates much of its argument against the "reasonable hypothesis analytical construct" in *Geesa v. State* and *McCarty v. State*, and as to "affirmative link" it attaches to its brief in this cause its brief in *McCarty*. But see *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991); *McCarty v. State*, 820 S.W.2d 795 (Tex.Cr.App. 1991). Neither is a probation revocation case, however.

**11.** The State cites *Garrett v. State*, 619 S.W.2d 172 (Tex.Cr.App.1981), and other related decisions, particularly about an appellate court "substituting its collective judgment."

Interestingly, therein the late Judge Teague cited *Ford v. State*, 488 S.W.2d 793 (Tex.Cr.App. 1972), in which, writing for the Court the late Judge Douglas pointed out that because the Court had long suggested that trial judges should enter findings on grounds relied upon to revoke probation, "[f]ailure to comply with a request to make findings in support of an order revoking probation may call for a reversal." *Id.*, at 795. He then added the source for the comment Judge Teague made in *Garrett*, viz:

"... *When the trial judge makes findings on violation of a condition to revoke probation*, whether by request or on his own motion, we will not substitute the opinion of this appellate court for his judgment."

*Ibid.* Judge Teague transformed that inducement to make findings into a broader *ipse dixit*, viz:

"... *When supported by the evidence*, this Court will not substitute its collective judgment for the decision of the trial court."

*Garrett*, at 175.

Like most proverbial renditions, that one also is derived from a larger formulation. Judge Teague had already laid down the underlying proposition that "the burden of proof in a probation revocation proceeding is by a preponderance of the evidence." *Id.*, at 174. Perhaps unwittingly, certainly unfortunately, he followed that with expressing a rule gleaned from one decision in "nonprobation" case and a decision in probation case relying on the first (and another) "nonprobation case," i.e., a reviewing court "must view the evidence in a light most favorable to the verdict." *Ibid.* In any event, after exploring the law of "assault" and focusing on certain testimony, he went on to decide the controlling issue in favor of the State.

Then *"assuming without deciding"* that accused had raised the issue of self-defense, Judge Teague made the pronouncement in question, and ruled against him. In that kind of convoluted situation one has difficulty comprehending exactly what he meant—particularly considering that he added "where the standard of proof is beyond a reasonable doubt," an accused rarely will establish self-defense *"as a matter of law."* *Id.*, at 175.

When Judge Teague said "supported by the evidence" in the context of considering a defensive issue that by its nature once an accused produces relevant evidence supporting the defense in a probation revocation proceeding, the State retains the burden of persuasion on the issue by a preponderance of the evidence, compare V.T.C.A. Penal Code, §§ 2.04(c) and 9.02, unless he actually meant "supported by a preponderance of the evidence," whatever he had in mind is so obscure as to have little value as precedent.

That an appellate court will not substitute its collective judgment for actual or presumed findings of the trial court in a revocation proceeding that the State discharged its burden by "a preponderance of the evidence," after they pass "the greater weight of the credible evidence" test is, so to speak, self-evident.

effort to bring appellate review of disparate degrees of standards of proof under the singularly inapposite rubric of *Jackson v. Virginia.*

Therefore, I respectfully dissent to resorting to a dismissal in lieu of confronting the issues we granted to review.