In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00141-CR
______________________________


RICKY DEWAYNE CHAMPION, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 2003-4685


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            It was August 1, 2004. As Jennifer Champion told it, Rickey Dewayne Champion—her ex-husband, father of her two children, and already on community supervision for misdemeanor family
violence assault—was angry again. Jennifer looked out a window of her home toward the driveway
and watched Rickey load a shotgun. From his position just outside the house, Rickey telephoned
her using his cell phone and told her he was going to kick the door down, shoot her, and then shoot
himself. Frightened, she retreated, with one of her children,


 behind a succession of three locked
doors into a closet while she called 9-1-1 on her cell phone. When police arrived, Rickey initially
eluded them by driving off in his truck, but eventually was apprehended. Police found a handgun
in the cab of his truck, though Rickey had disposed of the shotgun while fleeing. The State sought
to revoke Rickey's community supervision on two counts of committing a criminal offense while on
community supervision; first, various terroristic threats to kill Jennifer and, second, unlawfully
carrying a handgun "on or about his person." We affirm the revocation


 because we hold (1) the
evidence proved Rickey's identity, (2) admitting hearsay testimony was not harmful error, and (3)
the evidence sufficiently proved an offense.
1.         The Evidence Proved Rickey's Identity
            Rickey contends the State failed to prove that he was the same person who was placed on
community supervision in the underlying case. We disagree.
            After the close of the evidence, during the closing statement, Rickey's counsel argued to the
trial court that the State failed to prove identity, that is, that Rickey is the same person who was
placed on community supervision in trial court cause number 2003-4685. Rickey made identity an
issue in the trial court proceedings, so it is properly raised on appeal. Tex. R. App. P. 33.1(a). But
the evidence spoils his claim.
            At the commencement of the revocation hearing, the following was recorded:
The Court:Okay. I'll take up both matters. Now, stand, Mr.
Champion. In Cause No. 2003-4685, the State of Texas in that cause has
filed an application to revoke your probation. Remain standing for the
presentation from the prosecutor of the application.
 
[Defense Counsel]:Your Honor, in the interest of time, Mr.
Champion has read the document. He and I discussed it. He understands it. 
I believe he's willing to waive the reading of the application.
 
The Court:Is that correct, Mr. Champion?
 
The Defendant:Yes, Your Honor.
 
The Court:Do you waive the reading of the allegation?
 
The Defendant:Yes, Your Honor.
 
The Court:Do you know what they're alleging you did that
violated your probation?
 
            The Defendant:           Yes, Your Honor.
 
Thus, by his own admission, Rickey without making his identity an issue, identified himself as the
defendant in cause number 2003-4685, the proceedings which were at issue in the revocation
hearing. See Kent v. State, 809 S.W.2d 664, 666 (Tex. App.—Amarillo 1991, pet. ref'd); Pettit v.
State, 662 S.W.2d 427, 429 (Tex. App.—Corpus Christi 1983, pet. ref'd).
            Moreover, Jennifer also identified Rickey at the revocation hearing as the one placed on
community supervision for the previous family violence assault. 
[Prosecutor]:Now, last year, is it true that you came to the district attorney's
office to apply for a protective order from Mr. Champion?
 
[Witness]:It is true.
 
[Prosecutor]:And what caused you to apply for the protective order?
 
[Witness]:He [Rickey] assaulted me.
 
[Prosecutor]:Did he eventually go on probation for that same assault?
 
[Witness]:He did.
 
[Prosecutor]:And to your knowledge, he was currently on probation when
this new incident happened; is that correct?
 
[Witness]:That's true.

Also, Amy Caudle, a community supervision officer in Gregg County, identified Rickey as the one
who was placed on community supervision back in November 2003 under her supervision. This is
sufficient  to  identify  Rickey  as  the  one  placed  on  community  supervision  in  trial  cause
number 2003-4685. The trial court did not err in revoking Rickey's community supervision in the
face of Rickey's contention that identity was not proven.
2.         Admitting Hearsay Testimony Was Not Harmful Error
            Rickey also contends the trial court erred in admitting hearsay evidence from two sources,
a police officer's testimony recounting what Jennifer said a few minutes after her 9-1-1 call and a
videotape made later containing additional statements by Jennifer.
            A ruling on admissibility of an out-of-court statement under a hearsay exception is within
the trial court's discretion, subject to review only for abuse of discretion. Coffin v. State, 885 S.W.2d
140, 149 (Tex. Crim. App. 1994). Rickey concedes the trial court has discretion in determining the
admissibility of an out-of-court statement under the "excited utterance" hearsay exception. See 
Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995); Magee v. State, 994 S.W.2d 878,
886 (Tex. App.—Waco 1999, pet. ref'd).
            The critical factor in determining when a statement is an excited utterance under Tex. R.
Evid. 803(2) "is whether the declarant was still dominated by the emotions, excitement, fear, or pain
of the event." Lawton, 913 S.W.2d at 553; (citing McFarland v. State, 845 S.W.2d 824, 846 (Tex.
Crim. App. 1992)). The time elapsed between the occurrence of the event and the utterance is only
one factor considered in determining the admissibility of the hearsay statement. Id. That the
declaration was a response to questions is likewise only one factor to be considered and does not
alone render the statement inadmissible. Id. 
            The requisite indicia of reliability are present when a hearsay statement is shown to be a
spontaneous utterance. A spontaneous utterance is an exception to the hearsay rule if (1) the
statement is the product of an occurrence startling enough to produce a state of nervous excitement
which would render the utterance spontaneous and unreflecting, (2) the utterance is made before
there is time to contrive and misrepresent, that is, the state of excitement produced by the startling
event must still dominate the reflective powers of the mind, and (3) the utterance must relate to the
circumstances of the occurrence preceding it. Sellers v. State, 588 S.W.2d 915, 918 (Tex. Crim.
App. [Panel Op.] 1979). It is not necessary that each of these requisites be independently and clearly
shown. Id. The focus of the inquiry is whether the cumulative effect of the three requisites
combined is sufficient to show the reliability of the statement. Id.
            The trial court admitted the testimony of Laura Robinson, a police officer employed by the
Longview Police Department, recounting statements made by Jennifer. Earlier, Rickey had taken
from the house a shotgun, shotgun shells, and a vest and left the house.


 Jennifer observed Rickey,
outside the house, load the shotgun. Then Rickey called Jennifer via their cell phones and threatened
to kick down the door and shoot her. That is when Jennifer locked herself and her five-year-old son
in a closet and called 9-1-1. 
            Rickey's loading the shotgun and issuing threats was startling enough to produce a state of
nervous excitement in Jennifer. Only ten to twenty minutes had elapsed between the threats and
when Officer Robinson took Jennifer's first statement. According to Robinson, Jennifer was scared,
upset, nervous, and anxious; had been crying; and was shaking all over when she questioned her. 
And, Jennifer recounted only what had transpired between her and Rickey leading up to the
emergency call. All three criteria listed in Sellers are met. Hence, the trial court did not abuse its
discretion by allowing the hearsay statements to come under the excited utterance exception. 
            Even if the statements were not covered under the excited utterance exception, the admission
of the testimony was harmless. The admission of inadmissible hearsay constitutes nonconstitutional
error,


 and it will be considered harmless if the appellate court, after examining the record as a
whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect. 
See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Broderick v. State, 35 S.W.3d
67, 74 (Tex. App.—Texarkana 2000, pet. ref'd). Likewise, the improper admission of evidence is
not reversible error if the same or similar evidence is admitted without objection at another point in
the trial. Mayes v. State, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); Broderick, 35 S.W.3d at 74. 
            Without objection, Jennifer testified to the same matter, almost verbatim, as testified to by
Robinson. Admission of inadmissible evidence is harmless error if other evidence, proving the same
fact that the inadmissible evidence sought to prove, is admitted without objection at trial. Willis v.
State, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989); Broderick, 35 S.W.3d at 74; Poole v. State,
974 S.W.2d 892, 899 (Tex. App.—Austin 1998, pet. ref'd). Because Jennifer's testimony, admitted
without objection, was the same evidence that was testified to by Robinson, any error by the trial
court in admitting Robinson's testimony was harmless.


 We overrule Rickey's point of error.
3.         The Evidence Sufficiently Proved an Offense
            Rickey also asserts the State failed to prove an offense by him. Again, we disagree.
            In a revocation hearing, the decision whether to revoke rests within the discretion of the trial
court. Wester v. State, 542 S.W.2d 403, 405 (Tex. Crim. App. 1976). This discretion is not absolute. 
Scamardo v. State, 517 S.W.2d 293 (Tex. Crim. App. 1974). The State's burden of proof on a
motion to revoke community supervision is lower than the burden of proof necessary for criminal
conviction. The State need only prove by a preponderance of the evidence that the terms of
community supervision were violated. Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993);
Cardona v. State, 665 S.W.2d 492 (Tex. Crim. App. 1984). 
            "Preponderance of the evidence" has been defined as the greater weight and degree of
credible testimony. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, 95 (1935); Allen v. State, 786
S.W.2d 738, 741 (Tex. App.—Fort Worth 1989), pet. dism’d, 841 S.W.2d 7 (Tex. Crim. App. 1992);
Hill v. State, 721 S.W.2d 953, 954–55 (Tex. App.—Tyler 1986, no pet.); Davenport v. Cabell's, Inc.,
239 S.W.2d 833, 835 (Tex. Civ. App.—Texarkana 1951, no writ). This standard is met when the
greater weight of the credible evidence creates a reasonable belief that the defendant violated a
condition of his or her community supervision as the State alleged. Martin v. State, 623 S.W.2d 391,
393 n.5 (Tex. Crim. App. 1981); Allbright v. State, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth
2000, pet. ref'd). 
            The State alleged Rickey violated the conditions of his community supervision by
committing the offense of terroristic threat, which Section 22.07(a) of the Texas Penal Code defines: 
            (a) A person commits an offense if he threatens to commit any offense
involving violence to any person or property with intent to:

                        . . . .

                                    (2) place any person in fear of imminent serious bodily injury.
Tex. Pen. Code Ann. § 22.07(a)(2) (Vernon Supp. 2004–2005). A threat is defined as "a
declaration of intention or determination to inflict punishment, loss or pain on another, or to injure
another by the commission of an unlawful act." Cook v. State, 940 S.W.2d 344, 347 (Tex.
App.—Amarillo 1997, pet. ref'd). Imminent means "[n]ear at hand; mediate rather than immediate;
close rather than touching; impending; on the point of happening; threatening; menacing; perilous."
Devine v. State, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); Cook, 940 S.W.2d at 347. 
            Conditioning a threat of harm on the occurrence or nonoccurrence of a future event does not
necessarily mean that threat is not imminent. Cook, 940 S.W.2d at 348. The accused's threat of
violence, made with the intent to place the victim in fear of imminent serious bodily injury, is what
constitutes the offense. Id.; see Dues v. State, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982). The
requisite intent can be inferred from the acts, words, and conduct of the accused. Cook, 940 S.W.2d
at 348; see Beltran v. State, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980). The offense is complete
if the accused, by his or her threat, sought as a desired reaction to place a person in fear of imminent
serious bodily injury. Cook, 940 S.W.2d at 348.
            In a community supervision revocation hearing, the trial court is the sole trier of fact. Jones
v. State, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). The trial court also
determines the credibility of the witnesses and the weight to be given to their testimony. Id. It may
accept or reject any or all of the witness' testimony. Mattias v. State, 731 S.W.2d 936, 940 (Tex.
Crim. App. 1987). When there is conflicting evidence, the appellate court usually regards the finding
of the trier of fact as conclusive. Tagle v. Galvan, 155 S.W.3d 510, 518 (Tex. App.—San Antonio
2004, no pet.). Therefore, we will examine the evidence in the light most favorable to the trial
court's order revoking community supervision. See Garrett v. State, 619 S.W.2d 172, 174 (Tex.
Crim. App. 1981).
            The testimony of Jennifer and Officer Robinson detailed four discrete threats by Rickey
against Jennifer: (1) he would kick down the door and shoot Jennifer and then himself; (2) if
Jennifer locked him out again, he would cut off her head; (3) if anyone came to the door, all would
be leaving the house bloody and in a white sheet; and (4) if he went to jail and lost his job, he would
get out and kill Jennifer. 
            Rickey's threat, issued while he had possession of a loaded shotgun,


 to kick the door down
and shoot her, then himself, was both immediate and unconditional, and was thus a terroristic threat. 
See Cook, 940 S.W.2d at 348–49. Jennifer became afraid for her life and the life of her five-year-old
son. Jennifer immediately called 9-1-1 and hid herself and her son behind three locked doors to be
safe from Rickey. Rickey's threat placed Jennifer in fear of imminent serious bodily injury and, thus,
constitutes a terroristic threat. Dues, 634 S.W.2d at 306; Cook, 940 S.W.2d at 348.
            The other threats may constitute other instances of the offense of terroristic threat, but we
need not address them. And, because we find at least one terroristic threat was sustained by the
evidence—and thus Rickey violated the condition of his community supervision requiring him to
"commit no offense against the laws of Texas, any other State or the United States"—we need not
address whether the evidence supports the trial court's finding that Rickey unlawfully carried a
handgun.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 21, 2005
Date Decided:             May 17, 2005

Do Not Publish