In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00169-CR


______________________________




TROY SHONNARD GLOVER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 252nd Judicial District Court


Jefferson County, Texas


Trial Court No. 79738




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 On June 5, 2000, Troy Shonnard Glover was convicted of sexual assault of a child pursuant
to Tex. Pen. Code Ann. § 22.011 (Vernon Supp. 2002). The jury assessed punishment, enhanced
by a previous felony conviction, at twelve years' imprisonment. In five points of error, Glover
complains the evidence was both factually and legally insufficient to support his conviction. Glover
further complains that hearsay testimony was erroneously admitted and that this amounted to a
violation of his confrontation rights under the United States and Texas Constitutions.

 The issue at trial was whether Glover, age twenty-six, (1) had sexual relations with A. H., the
fourteen-year-old complainant. A. H. filed a complaint with the Beaumont police on May 14, 1999,
but was unavailable to testify when the case was tried. (2) The issues in this appeal are centered
primarily around the admission of hearsay statements of the complainant, A. H., as related in court
by her mother, Diane.

 In his first point of error, Glover asserts the evidence was legally insufficient to support his
conviction. In reviewing a legal sufficiency challenge, we review all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Williams v. State, 937 S.W.2d 479, 482-83 (Tex. Crim.
App. 1996). 

 A person commits the offense of sexual assault when he (1) intentionally or knowingly (2)
causes the penetration of the anus or female sexual organ of a child by any means. Tex. Pen. Code
Ann. § 22.011(a)(2)(A). A child means a person younger than seventeen years of age who is not the
spouse of the actor. Tex. Pen. Code Ann. § 22.011(c). Rather than alleging all statutory manners
of committing the offense, the State only alleged that Glover intentionally and knowingly caused the
penetration of the female sexual organ of A. H. by inserting his male sexual organ. The age
(fourteen) and marital status (unmarried) of A. H. was uncontested and conclusively established at
trial. 

 The State offered the following evidence of Glover's guilt. Ron Kyles, Sr. (A. H.'s uncle) ran
Pleasure Island, a restaurant where Glover worked. Kyles, Sr. testified he overheard Glover admit
that "he screwed the s__t out of [A. H.]," and that Glover would go to Mexico before he would go
to jail. Ron Kyles, Jr. (A. H.'s cousin) also worked at Pleasure Island. He testified to what he termed
an "attempted seduction" of A. H. by Glover. The flirtatious encounter included winks, smiles,
touching, and games. He also testified (over objection) that A. H. had told him she had slept with
Glover. Diane testified Glover admitted to her that he had picked up A. H. at one a.m. on May 15
from her father's house and taken her to his apartment. Paul Pirtle, a coworker of Glover, testified
to a separate conversation with Glover wherein Glover admitted he thought A. H. was "hot," that he
knew she was only fourteen, and that he had picked her up and had sex with her. Pirtle also related
a second statement that Glover said he would "do whatever it took to . . . stop from going back to
jail" if his liaison with A. H. were discovered. Kandi Phillips, an ex-coworker of Glover, testified
to a separate conversation during which Glover said he was facing statutory rape charges for having
sex with A. H. When Phillips asked Glover if he had "slept with" (3) A. H., he said yes.

 Glover complains there was no direct evidence of penetration of the female sexual organ of
the victim as alleged in the indictment. He argues this renders the evidence legally insufficient. It
is not necessary for a conviction to rest on direct evidence. One witness providing circumstantial
evidence of each element satisfies the State's burden with respect to legal sufficiency. The State
offered several different out-of-court admissions made by Glover, indicating that he had engaged in
the charged conduct.

 The State also offered the hearsay testimony of Diane. Glover argues that this evidence is
inadmissible and that without this critical evidence, the State's case is both factually and legally
insufficient. While the admissibility of the complained-of hearsay is discussed at length below, we
will include the contested evidence in our review. When addressing a challenge to the sufficiency
of the evidence, even erroneously admitted evidence must be considered. Rodriguez v. State, 819
S.W.2d 871, 873 (Tex. Crim. App. 1991). Diane testified that A. H. had admitted to two different
sexual encounters with Glover and that they had "used latex" or a condom. 

 Viewing all of the evidence in the light most favorable to the verdict, a rational trier of fact
could have found the essential elements of sexual assault of a child beyond a reasonable doubt. 
Glover's first point of error is overruled.

 In his second point of error, Glover asserts the evidence was factually insufficient to support
his conviction. In reviewing a challenge to the factual sufficiency of the evidence, we view all the
evidence without the prism of "in the light most favorable to the verdict." Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). We determine whether a neutral view of all the evidence, both
for and against the verdict, demonstrates that the proof of guilt is so obviously weak it undermines
confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
When performing this review, we give due deference to the jury's assessment of the weight and
credibility of the evidence. Id. at 20. We will find the evidence factually insufficient only where
necessary to prevent manifest injustice. Id. If we find the evidence factually insufficient, we vacate
the conviction and remand for a new trial. Jones, 944 S.W.2d at 648; Clewis v. State, 922 S.W.2d
126, 133-35 (Tex. Crim. App. 1996).

 The only testimonial evidence offered by Glover in his defense was that of Diane. He re-called her to the stand to testify regarding a possible boyfriend who A. H. may have had at school. 
Glover also introduced several notes written by A. H. to a classmate. A note dated January 15, 1999,
and written by A. H. to a friend read, "I would tell you all about last night but all of these wandering
eyes don't need 2 know all about my sex life . . . ." A note by A. H. dated March 8, 1999, related
how upset A. H. was about having to move away from a boy for whom she had strong feelings, while
another (no date) read that she would do anything to be with him. The State introduced a separate
note from April 15, 1999, wherein A. H. indicated she thought her parents were taking her to a
doctor to "see if [she] had sex or something," but confided to her friend that she had not done so. 
A. H. also stated how strongly she wanted to see another boy from school. Glover argues that the
letters show A. H. may have had relations with boys her own age and that to protect these boys, she
fabricated Glover's involvement. The remainder and greater part of Glover's factual sufficiency
argument centers on challenging the credibility of the witnesses who testified to Glover's various
admissions. 

 Unless the record clearly reveals a different result is appropriate, an appellate court must
defer to the jury's determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor that the jury is better
situated to make. Johnson, 23 S.W.3d at 8. The same holds true for uncontradicted witness
testimony where the credibility of the evidence is challenged by cross-examination. In this case,
several witnesses testified to Glover's admissions of sexual congress with A. H. Each witness was
cross-examined. Although other people were also present when the admissions were made, Glover
did not call them to either refute or explain the context of prior witnesses' testimonies regarding the
admissions. Possible relationships between boys at school and A. H., even if established, would not
negate her contact with Glover. The case rests primarily on the credibility of the State's witnesses,
combined with the jury's understanding of what the phrases "screwed the s__t out of," "had sex
with," and "slept with" meant. 

 A neutral view of all the evidence, both for and against the verdict, demonstrates the proof
of guilt was not so obviously weak it undermined confidence in the jury's determination. The proof
of guilt was not greatly outweighed by contrary proof. The evidence was factually sufficient to
support the conviction. Glover's second point of error is overruled.

 Over proper and timely objection of the defense, Diane was permitted to relate statements
made by A. H. during a confrontation between the two. Glover contends that this testimony was
hearsay, not within any exception, and that the trial court erred in admitting it. 

 The evidence at trial showed the following: In May of 1999, A. H.'s parents were separated
and living in different residences in Beaumont. At around one a.m. on May 15 (the early morning
after Mother's Day), A.H. sneaked out of her father's house, and Glover picked her up. A. H.'s
mother found out and called Glover to confirm he had picked A. H. up from her father's. Diane
confronted A. H. that same evening. At the time, Diane only knew about the events from the same
day. She told A. H., however, that she had already talked to Glover and that she "knew everything,"
but wanted to hear it from her daughter. A. H.'s emotional condition was described as uptight,
emotional, then increasingly shaky. This charged emotional state was coupled with agitated behavior
including crying and wringing of hands. Under the pressure of these circumstances, A. H. revealed
the hearsay statements to which her mother testified and of which Glover complains.

 Diane was permitted to testify to the out-of-court statements of A. H. The following
exchange took place between the prosecutor and Diane:

 Q. Was it your intention to confront [A. H.] regarding that situation
[sneaking out of the house]?


 A. Yes.


 . . . .


 Q. . . . How did you confront her?


 A. Well, as soon as she came into the living room, I said, "We're going
to talk about this. I've already talked to Troy. I know everything. You're going to
get a whipping for sneaking out of your house." I said, "I've already talked to Troy
[Glover]"; so, I didn't want any lies, I didn't want any shrugs of the shoulders, I didn't
want to hear, "I don't know." . . . .


 [I told her] "By the way, I've already heard. So, tell me the truth."


 . . . .


 Q. When you told her to tell you what was going on, what had happened,
what was the first thing she told you?


 MR. KIMLER [defense counsel]: Objection, Your Honor,
it's hearsay, violation of right to confront and cross examine, as well as due process. 


 THE COURT: Overruled.


 Q. (by Mr. Rodriguez) What was the first thing that she told you after you
told her, "You better tell me the truth. I know everything that's happened"?


 A. The very first thing she said is, "I snuck out of the house last night."


 I said, "No, I want to know everything, [A. H.]."


(At this point, defense counsel requested and was granted a running objection to the testimony
regarding hearsay statements of A. H.)

 Q. What did she say then?


 A. She said, "He picked me up last Sunday."


 Q. Now, she said, "He picked me up last Sunday." At this point you're
not talking about Mother's Day anymore, are you?


 A. No.


 Q. She's talking now about the previous Sunday.


 A. Right.


 . . . .


 Q. What was the next thing she told you?


 A. She said, "He took me to his apartment, and we had sex."


 Q. Did she describe anything about anything that happened leading up
to having sex?


 A. She said, "We danced, listened to music; and then we had sex."


 And I said, "Where?"


 She said, "On the floor."


 . . . .


 Q. What was the next thing that you asked her?


 A. I said, "Oh, my God, [A. H.]. Was it safe sex?"


 She said, "Yes."


 And I said, "So, what's safe sex?"


 And she said, "Latex, Mom."


 Q. Referring to a condom?


 A. Yes.


 . . . .


 Q. (By Mr. Rodriguez) On the day that you confronted [A. H.] when you
found out what had actually happened, on that day what did she tell you was the truth
about [a different] day she was supposedly late from school?


 A. Troy [Glover] had picked her up from school after school, had taken
her to his apartment and had sex again and brought her back home.


 Q. Was it after this that you contacted the Beaumont Police Department?


 A. Yes, sir.


 At trial, the State had argued this testimony should be admitted under either Rule 804(b)(3),
as a statement of personal family history, or under Rule 803(3), as a statement of then-existing
mental condition. (4) See Tex. R. Evid. 803, 804. The trial court allowed all of the hearsay testimony. 
No requests for limited admissibility of this testimony were made, and no limiting instructions were
given to the jury. On appeal, the State has correctly abandoned Rule 804(b)(3) as a basis for
admission. 

 Rule 803(3) creates an exception to the hearsay rule for a "statement of the declarant's then
existing state of mind . . . but not including a statement of memory or belief to prove the fact
remembered or believed . . . ." Tex. R. Evid. 803(3). The State that the evidence related to A. H.'s
emotional state during the confrontation with her mother as well as to her motivation for continuing
acts of disobedience to her parents. These statements go well beyond A. H.'s then-existing emotional
state during the confrontation with her mother. They offer a description of past facts. The only
purpose of the statements in question was to prove Glover had sex with A. H. Evidence that seeks
to establish a purported fact remembered and related in the utterance is specifically excluded from
the state of mind exception. Norton v. State, 771 S.W.2d 160, 166 (Tex. App.-Texarkana 1989, pet.
ref'd). To the extent the hearsay statement implicates the declarant's intent, plan, motive, and the
like, the statement must relate to future conduct to be undertaken after the statement was made. See
Jones v. State, 515 S.W.2d 126, 129 (Tex. Crim. App. 1974) (holding hearsay inadmissible under
state of mind exception because statement did not reflect intent or motive for future action, but only
discussed preceding events). The testimony of Diane, relating statements made by her daughter and
seeking to establish the truth of facts remembered regarding past events, is inadmissible under the
state of mind exception to the hearsay rule. See Tex. R. Evid. 803(3). 

 The State also argues that the statements of A. H. were admissible as excited utterances. See
Tex. R. Evid. 803(2). It is immaterial that this particular argument was not pressed at trial. If the
trial court's decision is correct on any applicable theory of law, it will be sustained. Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990). This is especially true with regard to the admission
of evidence. Id. The admission of evidence is reviewed only for an abuse of discretion. Salazar v.
State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). The trial court's decision will be affirmed
if it is within "the zone of reasonable disagreement." Id. 

 An excited utterance is not excluded by the hearsay rule, regardless of the declarant's
availability, and is defined as "[a] statement relating to a startling event or condition made while the
declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid.
803(2). This exception has three requirements: (1) the statement must be a product of a startling
occurrence that produces a state of nervous excitement in the declarant and renders the utterance
spontaneous and unreflecting, (2) the state of excitement must still so dominate the declarant's mind
that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to
the circumstances of the occurrence preceding it. Sellers v. State, 588 S.W.2d 915, 918 (Tex. Crim.
App. [Panel Op.] 1979). The court need not examine each requirement independently, but should
focus instead on whether their combined effect shows the statement to be sufficiently reliable. Id. 
In discussing the application of this exception, the Court of Criminal Appeals recently reiterated that

 It is not dispositive that the statement is an answer to a question or that it was
separated by a period of time from the startling event; these are simply factors to
consider in determining whether the statement is admissible under the excited
utterance hearsay exception. The critical determination is "whether the declarant was
still dominated by the emotions, excitement, fear, or pain of the event" or condition
at the time of the statement.


Salazar, 38 S.W.3d at 154 (citations omitted) (quoting McFarland v. State, 845 S.W.2d 824, 846
(Tex. Crim. App. 1992)).

 The theory of the excited utterance exception is that circumstances may produce a condition
of excitement that temporarily stills the capacity for reflection and produces utterances free of
conscious fabrication. 2 Goode, Wellborn & Sharlot, Texas Practice: Texas Rules of
Evidence: Civil and Criminal § 803.3 (2nd ed. 1993). The requirement the exclamation relate
to the occurrence or its cause is not emphasized by the general theory of Rule 803(2). This type of
hearsay is deemed reliable, and therefore admissible, to the extent it is the spontaneous, involuntary
product of an excited state of mind. See Parks v. State, 843 S.W.2d 693, 697 (Tex. App.-Corpus
Christi 1992, pet. ref'd). Spontaneity is the primary factor which makes these statements reliable. 
De Leon v. State, 500 S.W.2d 862, 867 (Tex. Crim. App. 1973) (citing Fisk v. State, 432 S.W.2d
912, 915) (Tex. Crim. App. 1968)). The fact that they relate to some occurrence other than the
startling event itself or its cause should not make them less reliable. See Bondurant v. State, 956
S.W.2d 762, 765 (Tex. App.-Fort Worth 1997, pet. ref'd).

 The time elapsed between the crime and the utterance is also not a critical factor. The key
is not whether there was an opportunity for reflection between the crime itself and the utterance in
question. The critical element is the relationship between the utterance and the triggering event. A
statement that is simply a narrative of past events or acts, as distinguished from a spontaneous
utterance, does not qualify as an excited utterance no matter how soon after the event it is made. 
First Southwest Lloyds Ins. Co. v. MacDowell, 769 S.W.2d 954, 959 (Tex. App.-Texarkana 1989,
writ denied). The only requirement concerning time is the necessity that the statement be made
while in a state of excitement caused by the startling event. City of Dallas v. Donovan, 768 S.W.2d
905, 908 (Tex. App.-Dallas 1989, no writ). The circumstances must show that it was the event
speaking through the person and not the person speaking about the event. First Southwest, 769
S.W.2d at 959.

 The startling event that triggers the excited utterance need not be the crime itself, as long as
the statement produced by the event is probative of an issue in the case. See Tex. R. Evid. 402
(stating all relevant evidence admissible); see also Hunt v. State, 904 S.W.2d 813, 815 (Tex.
App.-Fort Worth 1995, pet. ref'd). In Hunt, an eleven-year-old girl was sexually assaulted by her
father's friend. Three months later, she saw a television show about a young rape victim who had
been stabbed by her attacker. Id. at 815. The girl began to cry uncontrollably. Id. When her mother
questioned why she was crying, the girl told her mother about the sexual assault. Id. At trial, the
victim testified that on seeing the news program, she had become fearful that she might be pregnant. 
Id. at 816. The victim's mother was also permitted to testify, over objection, to the contents of the
conversation. Id. The court held that the shock of seeing the television news program triggered the
victim's out-of-court statements, and her fear of pregnancy was startling enough to produce a state
of nervous excitement so as to render her subsequent remarks spontaneous. Id. at 816-17.

 There are similarities between Hunt and the present case, but the differences predominate. 
Here, A. H. revealed the existence of a statutory sexual assault under the stress induced by conditions
completely independent of the crime itself. The most obvious distinctions are the age of the
declarant (fourteen versus eleven), and the fact that A. H. was unavailable to testify. The stressful
event which triggers the statements is also distinguishable. A. H.'s stress was induced by her
mother's questions in the context of a confrontation. The confrontation itself was intentionally
stressful, calculated to elicit a confession from A. H. about sneaking out of her father's house. As
indicated by Diane, A. H. was dominated by the emotions, excitement, and fear of disappointing her
mother, combined with the threat of receiving a "whipping" for sneaking out. In Hunt, the
declarant's stress arose spontaneously in response to an independent and otherwise nonstressful
experience. The distinction here is not unlike the distinction between someone blurting out their
complicity in a crime when asked why they are upset and someone breaking down and confessing
to a crime under the pressure of interrogation. The former is spontaneous, the latter is not.

 In this case, the question is whether the combined effect of the three Sellers factors suggest
that A. H. was not likely to engage in conscious reflection or fabrication before answering her
mother's questions. To answer this question, we must examine the totality of the circumstances
within which the statements were made. The reliability of an excited utterance must be determined
by considering the overall effect of the three criteria as indicia of reliability. See Sellers, 588 S.W.2d
at 918. A. H. does not respond in a spontaneous fashion, but responds directly to what she believes
her mother was asking. (5) When she confronted A. H., Diane said she had already talked to Glover,
so she knew everything, but wanted to hear it from A. H. When A. H. started to talk about the
previous night, Diane stopped her and said, "No, I'm talking everything." According to the
testimony, it is at this point that A. H. began to talk about the sexual encounter from the prior week. 
Diane was surprised by this revelation, for she had not been aware of the prior encounter. The State
argues the mother's surprise at this point shows the responses of A. H. are spontaneous. The fact that
her mother was referring to the previous night, and was surprised by what A. H. said about the
previous week, is irrelevant. The spontaneity of the statements cannot be measured by the
expectations of the listener; only the speaker's perspective is important in determining spontaneity.

 In this case, Diane's questions were calculated to elicit information about past events and
activities, even if the specific data elicited was unanticipated. Responses to this type of questioning
are not spontaneous. Responses to this type of questioning are normally considered reflective
narratives of past events. This is the qualitative difference between the circumstances in this case
compared to those in Hunt. There, the questions were generalized, meant to ascertain how the girl
was feeling and why she was crying. Here, Diane's questions were specifically intended to elicit
details of past events of which the questioner was presumed to be already aware. In Hunt, the
younger child's age of eleven makes her less likely to consider the consequences of her answers. The
child in Hunt was also not placed under any threat of punishment. Here, the older A. H. has already
been placed under a disciplinary threat, making her much more likely to consider the consequences
of her answers before making them. Unlike Hunt, the circumstances in this case suggest reflective
consideration and allow an opportunity for conscious fabrication.

 Considered in light of the circumstances, the statements of A. H. are not sufficiently reliable. 
The circumstances do not strongly suggest A. H. would be incapable of falsehood or otherwise
suggest accuracy. The statements of A. H. comprise a reflective, narrative account of past events. 
They were made in response to direct, specific questions that were calculated to elicit the type of
responses given, even though the contents of the responses were unanticipated. A statement that is
simply a narrative of past acts or events is distinct from an excited utterance and does not qualify
under Rule 803(2) regardless of how soon after the event it is made. First Southwest, 769 S.W.2d
at 959 (citing Gulf, C. & S.F.R. Co. v. Moore, 69 Tex. 157, 6 S.W. 631 (1887)). A. H. may have
been upset, but that does not make her statements excited utterances. Her age and the threat of
punishment make the statements more likely to be reflective and premeditated. The danger of
allowing expansion of the excited-utterance exception to include this type of information is that it
will become as broad and indeterminate as the former res gestae exception. (6) 

 The statements of A. H. do not fall within the excited-utterance exception to the hearsay rule. 
We cannot say the statements in issue were spontaneous and unreflecting, or made without the
opportunity to contrive or misrepresent. See Sellers, 588 S.W.2d at 918. This conclusion is not
within the zone of reasonable disagreement. Admission of these statements was error, amounting
to an abuse of discretion by the trial court. See Salazar, 38 S.W.3d at 153-54. Glover's third and
fourth points of error are sustained.

 In his fifth point of error, Glover argues the trial court erred in admitting the out-of-court
statements of A. H. in violation of Glover's right to confront witnesses under the United States and
Texas Constitutions.

 Admission of hearsay evidence against a criminal defendant implicates the Confrontation
Clause of the Sixth Amendment because the defendant is denied the opportunity to confront the out-of-court declarant. Guidry v. State, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999), cert. denied, 531
U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (citing Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct.
2531, 65 L.Ed.2d 597 (1980)). In considering this constitutional issue, the decision of the trial court
is reviewed de novo. Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Not all hearsay
violates the Confrontation Clause. A hearsay statement is per se reliable for Confrontation Clause
purposes if it falls within a firmly rooted exception to the hearsay rule. Guidry, 9 S.W.3d at 149-50
(citing White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). Although the
evidence in this case does not fall within a firmly rooted exception to the hearsay rule, it may
nonetheless be sufficiently reliable for Confrontation Clause purposes if it has "particularized
guarantees of trustworthiness." Guidry, 9 S.W.3d 133 at 149 (citing Idaho v. Wright, 497 U.S. 805,
816, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); Roberts, 448 U.S. at 66).

 The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall
enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI. The
central concern of the Confrontation Clause is to ensure the reliability of evidence against a
defendant by subjecting it to rigorous testing in an adversarial proceeding before the trier of fact. 
Lilly v. Virginia, 527 U.S. 116, 124-25, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting Maryland
v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). Some statements that do not
fit into a firmly rooted hearsay exception may have other particularized guarantees of trustworthiness
that serve as a proxy for cross-examination, allowing the statements to be admitted without offending
the confrontation rights guaranteed to a criminal defendant. 

 The trustworthiness of hearsay evidence must be evaluated in light of the totality of the
circumstances, considering only those circumstances that surround the making of the statement and
that render the declarant particularly worthy of belief. Guidry, 9 S.W.3d at 150. Other evidence
admitted at trial cannot be considered in determining trustworthiness. Id. The trustworthiness
requirement is satisfied if cross-examination would be of only "marginal utility." Muttoni v. State,
25 S.W.3d 300, 307 (Tex. App.-Austin 2000, no pet.) (citing Lilly v. Virginia, 527 U.S. 116, 134,
119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)). Other evidence admitted at trial cannot be used to
corroborate the veracity of the hearsay or to support a claim that the statement bears the requisite
guarantees of trustworthiness. Muttoni, 25 S.W.3d at 307 (citing Lilly, 527 U.S. at 135 (holding
State may not bootstrap on trustworthiness of other evidence)). As the court in Guidry stated, "there
must be 'an affirmative reason arising from the circumstances in which the statement was made'
which provides a basis for rebutting the presumption that a hearsay statement is not reliable." 
Guidry, 9 S.W.3d at 150 (quoting Wright, 497 U.S. at 819). 

 Here, the circumstances under which these statements were made raise affirmative
possibilities for rebutting the presumption of unreliability. The reliability of the statements turns on
whether A. H. was influenced 1) by her mother's threat of punishment and 2) by her mother's
statement that she already knew everything, so that not answering truthfully would increase her
punishment. Possibilities are not affirmative reasons, however, and these questions are unanswered. 

 The circumstances raise several possibilities that call the reliability of the testimony into
question. A. H. had motives to fabricate. The statements to her mother could have been calculated
to shift or spread the blame, or divert attention away from her own culpability. The defense argued
that A. H. was shifting blame from a classmate her own age to an older man that she knew from her
uncle's restaurant. The fact that A. H. may have felt subject to punishment only exacerbated the risk
of unreliability. Without having her available for cross-examination, there was no way for the jury
to assess whether A. H. really told the truth, or whether she told her mother a story either to diminish
her own punishment or to prevent punishment of a schoolmate. Without having A. H. available for
cross-examination, there was no way for the jury to assess whether she believed her mother "knew
everything" or whether such a belief would have any impact on A. H.'s veracity. We cannot say that
cross-examination of A. H. on these matters would be of only marginal utility.

 The interrogation format of the discussion, combined with the age of the declarant, suggest
a lack of spontaneity. Further undermining the reliability of this testimony is the fact it was not
provided by an independent third party, but by a witness with a strong bias against Glover. On
balance, the circumstances weigh against reliability and therefore against admissibility.

 The State has failed to demonstrate this evidence was sufficiently reliable, either by showing
that it conformed to a firmly rooted hearsay exception or that there were other particularized
guarantees of trustworthiness that served as a proxy for cross-examination, allowing the statements
to be admitted without offending Glover's confrontation rights. A de novo review of the record
shows that admission of this hearsay testimony was error amounting to a violation of Glover's right
to confront witnesses against him under the Sixth Amendment to the United States Constitution and
Article I, § 10 of the Texas Constitution. U.S. Const. amend. VI; Tex. Const. art. I, § 10. Glover's
fifth point of error is sustained.

 The error in admitting these statements is a constitutional error because the admission of
hearsay implicates rights guaranteed by the Confrontation Clause. Guidry, 9 S.W.3d at 149. 
Because it is of constitutional dimension, the error must be analyzed under the constitutional
harmless error standard. See Tex. R. App. P. 44.2(a); Guidry, 9 S.W.3d at 149-50. The trial court's
judgment can only be affirmed if we determine beyond a reasonable doubt the alleged error did not
contribute to Glover's conviction or punishment. Tex. R. App. P. 44.2 (a); see also Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (stating constitutional errors should be analyzed in
same manner as under former Rule 81(b)(2)). 

 The testimony regarding A. H.'s hearsay statements covers 17 of the 138 pages of testimony
in the trial transcript. This evidence was also the focal point of the closing argument for both sides. 
The testimony recounted two specific sexual encounters and was much more detailed than any of
the other evidence offered by the State. This was also the only source of specific evidence of the
type of sexual contact: the testimony indicated "safe sex" and the use of a condom. It made the case
against Glover much stronger by reinforcing and elaborating on the other evidence available. This
evidence was emotional, powerful, and detailed. Its effect on the trial was that of dye spilled in a
water jar-all of the contents were tainted equally and inseparably.

 Because of the nature of the testimony, and because of the central role this evidence played
in the trial and argument, we cannot conclude beyond a reasonable doubt this error did not contribute
to the conviction. 

 The statements of A. H. do not qualify as excited utterances, and admitting these statements
was constitutional error. Further, on this record, we cannot say beyond a reasonable doubt the
alleged error did not contribute to Glover's conviction. 

 The judgment of the trial court is hereby reversed, and the case remanded for a new trial. 




 Ben Z. Grant

 Justice


Date Submitted: September 10, 2001

Date Decided: February 8, 2002


Publish
1. Evidence conflicted as to Glover's precise age, but all witnesses put his age between twenty-six and twenty-eight at the time of the offense.
2. By the time of the trial, both A. H. and her father had died. The circumstances of their
deaths were not in issue at trial.
3. She stated on direct examination that Glover admitted he "had sex with" A. H., but on cross-
examination allowed that the phrase may have been "slept with." Glover urges on appeal that this
shows the testimony is not credible. The jury determines the credibility of the evidence, not the
appellate court. See Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).
4. A. H. was over age twelve, so the State could not offer her statements through an outcry
witness under Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2002). Even had she been
twelve or younger, A. H. was unavailable to testify, so the State would have been forced to find an
alternative basis for admitting the hearsay statements.
5. This is distinct from Hunt v. State, 904 S.W.2d 813, 815 (Tex. App.-Fort Worth 1995, pet.
ref'd), where the question was generalized and did not anticipate any particular response.
6. See notes 2 through 5 and accompanying text in 2 Goode, Wellborn & Sharlot, Texas
Practice: Texas Rules of Evidence: Civil and Criminal § 803.3 (2nd ed. 1993), for criticism
of the nebulous res gestae formulation.