Jerry Michael SELLERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 57498.

Court of Criminal Appeals of Texas,
Panel No. 2.

Oct. 24, 1979.

Rehearing En Banc Denied
Nov. 21, 1979.

Malcolm Dade and Richard A. Anderson, Dallas, on appeal only, for appellant.

Jerry Spencer Davis, Dist. Atty., Greenville, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. V.T.C.A. Penal Code, Sec. 19.02. Punishment was assessed by the jury at 99 years.

Among the grounds of error advanced by appellant is the contention that the trial court erred in admitting the testimony of Deputy Merle Capwell relative to a statement he heard one Shirley Watson make in Utah.

The indictment charged that the appellant caused the death of his wife "by acute meperidine intoxication in some manner, way, or means to the Grand Jury unknown." Her body was found on October 5, 1974, in a shallow grave near a lake in Hunt County. We would first note that appellant admitted to having buried the body, but denied having caused her death.

On August 20, 1974, the day of his wife's death, appellant went to John Peak's home to borrow the keys to Peak's trailer house.

Appellant stated that he wanted to use the trailer house for a weekend fishing trip.

Appellant testified that when he returned home from Peak's house he found his wife dead, apparently from an overdose of Demerol [meperidine]. According to his testimony, he first became hysterical, and later panicked when he feared that he would be blamed for the death. He stated that he first covered the face of the deceased with a washcloth and then wrapped the body in a blanket. He then tied the blanket with telephone wire and placed it in the trunk of his car.

Appellant admitted that he told relatives of his wife a fabricated story to cover her disappearance. These relatives testified that they were told that the appellant's wife had "run off" with a young man, and that the appellant did not know where she had gone. These relatives testified regarding the relationship between the deceased and the appellant, and threats made by the appellant to kill the deceased.

On October 5, 1974, John Peak found a shallow grave near his trailer house at the lake. This grave contained the body of the deceased, still wrapped in the blanket.

The body was taken to Dallas for an autopsy to be performed by Dr. Ross Zumwalt, a Dallas County Medical Examiner. Dr. Zumwalt testified that the body had been buried from two weeks to three months. He found the cause of death to be acute meperidine (Demerol) intoxication. Although he determined that the drug had been orally ingested, he could not determine the manner or means by which the drug had been administered.

Dr. Bill Lowery, a toxicologist, testified that the autopsy on the deceased revealed no signs of Chloroform or Chloral Hydrate. He stated that both these chemicals were hypnotics and that they could induce sleep or even cause death if sufficient quantities were inhaled, ingested, or injected.

Dr. Lowery also performed tests on the washcloth found taped to the deceased's face. The purpose of these tests was to determine whether Chloroform or Chloral Hydrate had ever been present on the washcloth. The results of these tests were negative. In response to a hypothetical question from the State, Dr. Lowery testified that it is possible that no residue would be found even if these chemicals had been present.

The State introduced a bottle of Chloroform and a bottle of Chloral Hydrate found in the storehouse behind appellant's residence. Appellant had mentioned these bottles of chemicals in a letter sent by the appellant to a friend. The letter was entered into evidence.

After the body of the deceased was discovered a warrant was issued for the arrest of the appellant. It was learned from friends of the appellant that he was in Utah. Utah law enforcement officials were contacted regarding the arrest of the appellant and a subsequent search for items thought to be in the appellant's possession. Merle Capwell, a Duchane County, Utah, deputy sheriff, testified that he executed a search warrant on appellant's trailer house in Utah on October 9, 1974. Appellant was not present at the time the search was conducted. From appellant's residence Capwell went to a nearby trailer house belonging to Shirley Watson. The purpose of going to Watson's home was to take custody of the appellant's children.

Watson, appellant's landlord in Utah, apparently looked after appellant's children while appellant was working. The officer found appellant's children at Watson's trailer.

Capwell and three other officers who had executed the warrant were admitted to Watson's home and invited to sit at the kitchen table. According to Capwell, Watson became upset when she was told that the officers had come for the children and some guns, and ordered the officers off her property.

Watson and the officers argued for about 30 minutes. During this time Watson made

phone calls regarding Capwell's request to the sheriff of the county in which Watson's trailer house was located. Sometime during the hour that the officers were in her home Watson made a call to her attorney. Capwell could not remember whether this call was made before or after Watson made the statement that is the basis of appellant's ground of error.

During this initial 30 minutes, Capwell repeatedly told Watson that he wanted the children and the guns. Watson repeatedly refused to allow the officers to take either. Capwell testified that during this proceeding Watson was mad, excited, upset, vehement and used "rough" language.

Carla Sellers, the appellant's 16-year-old daughter, testified that she was in the next room of the trailer house when Capwell came to take custody of her and her brother. She stated that the officers arrived at approximately midnight. She could hear voices but could not make out the content of the conversation.

According to this witness, she heard no shouting and the tone of the conversation was hushed. Watson seemed upset, but not angry or extremely upset. She described the general demeanor of the parties to the conversation as friendly.

Capwell testified that after 30 minutes of the discussion, Watson made mention about their wanting the guns and stated, "The woman was not shot, she was suffocated." Capwell was allowed to testify as to this statement in the presence of the jury. Appellant objected to this testimony as hearsay. Watson did not testify.

The State maintains that Watson's statement was an exception to the hearsay rule as either a spontaneous utterance or an admission against Watson's penal interest.

■ The right to cross-examination of witnesses, insofar as necessary to effectuate the right to confrontation, is guaranteed by both U.S.Const., Amend. VI and Tex.Const., Art. I, Sec. 10. *Chambers v. Mississippi,* 410

U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right to cross-examine witnesses is not absolute, however, and can be denied when the evidence bears the indicia of reliability to ensure the integrity of the fact finding process. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Coulter v. State,* Tex.Cr.App., 494 S.W.2d 876; *Tezeno v. State,* Tex.Cr.App., 484 S.W.2d 374.

■ This Court has found the requisite indicia of reliability to be present when the hearsay statement is shown to be a spontaneous utterance. *Tezeno v. State,* supra. A spontaneous utterance is an exception to the hearsay rule if:

(1) "the statement is the product of an occurrence startling enough to produce a state of nervous excitement which would render the utterance spontaneous and unreflecting."

(2) "the utterance is made before there is time to contrive and misrepresent, that is, the state of excitement produced by the startling event must still dominate the reflective powers of the mind."

(3) "the utterance must relate to the circumstances of the occurrence preceding it."

*Tezeno v. State,* 484 S.W.2d at 378. 1 *C. McCormick and R. Ray,* Texas Practice, *Evidence,* Secs. 913–24 (1956) (hereinafter, McCormick and Ray). *Norwood v. State,* Tex.Cr.App., 486 S.W.2d 776.

■ It is not necessary that each of these requisites be independently and clearly shown. The focus of the inquiry is whether the cumulative effect of the three requisites combined is sufficient to show the reliability of the statement. *See Coulter v. State,* supra; *Tezeno v. State,* supra.

■ The event which precipitated this statement was such as could have produced the requisite "nervous excitement" to render this statement spontaneous. A mid-

night visit from police officers to take custody of children left in a person's charge is a startling event. Watson's reluctance to give over custody and continued opposition support a finding that the event was one that unsettled her state of mind.

This statement was not made at the time of the officers' arrival, however. The record reflects that the statement was made only after numerous demands for the children and guns, and after refusals by Watson. Also relevant is the fact that Watson made calls to the sheriff regarding this matter, and might have consulted with her lawyer before making this statement. Whatever startling effect the officers' initial demand could have had is attenuated by these actions. This evidence does not support a finding that the startling event still dominated Watson's reflective powers, nor that no time to contrive or misrepresent had passed.

Finally, the statement does not relate to the event preceding it. In the present case the startling event was the officers' demand for the children and guns. The statement concerns the cause of death of appellant's wife.[1] This third requirement has been relaxed, however, in this Court's decision in *Tezeno v. State,* supra.

In *Tezeno,* the defendant was arrested in a restaurant with a female companion. A pistol was found in the female's purse. The arresting officer, over appellant's objection, was permitted to testify that the woman told him the defendant had passed her the pistol when the officer entered. Thus, the startling event was either the arrest or finding the pistol, while the spontaneous utterance concerned a prior event and did not describe the startling event or state the cause of the startling event. The Court found the indicia of reliability sufficient. *Tezeno v. State,* 484 S.W.2d at 379.

It should be noted that the event described in *Tezeno* by the spontaneous utterance

was within the personal knowledge of the declarant, and had occurred close in time to the statement.

In the present case, the statement involved an event that had occurred three months before. More importantly, it is clear from the record that Watson could have had no personal knowledge of the event described, the death of the appellant's wife. The absence of these factors, coupled with the fact that the statement does not concern the startling event, weighs heavily in determining the indicia of reliability of this statement.

We find that because of the reasons set out above the statement does not qualify under the spontaneous utterance exception to the hearsay rule and further lacks the indicia of reliability necessary to supplant the absence of the historical criteria for the exception.

■ The State's argument that this statement was admissible as an admission against the declarant's penal interest is without merit. Regardless of the admissibility of such a statement as an exception to the hearsay rule, the statement does not on its face show to be against Watson's penal interest. *See, Ramirez v. State,* Tex.Cr. App., 543 S.W.2d 631; *Munoz v. State,* Tex. Cr.App., 435 S.W.2d 500; McCormick and Ray, Secs. 1005–7. The statement is not an admission of guilt, nor does it show Watson committed any crime. The State's argument that this statement shows that she was harboring a fugitive is at best tenuous.

We find that the statement was hearsay and was not admissible.

■ The State further maintains that even if admission of this statement was error, the error was harmless. We cannot agree.

The State's case consisted of circumstantial evidence that the appellant caused the

---

1. It is never explicitly explained who "was suffocated." It is clear that the statement was offered to infer that the deceased was "suffo-

cated" during the events that preceded her death.

# 920

deceased's death. The only logical conclusion the jurors could have drawn from the hearsay statement was that Watson was referring to the death of the deceased. It would follow that the jurors would conclude that Watson was alluding to the manner or means by which appellant caused her death.

We find that the appellant was harmed by the admission of the hearsay testimony.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

Appellant was convicted for the murder of his wife.

The majority reverses this conviction on the grounds that a hearsay statement was improperly admitted. The admission of that statement was harmless error.

Merle Capwell, deputy sheriff of Duchane County, Utah, testified that he executed a search warrant on appellant's trailer home in Utah. After the search, he went to a neighboring trailer home belonging to Shirley Watson in order to pick up Sellers' children. Capwell left and returned some time later. It was at this point that Watson stated, "The woman was not shot, she was suffocated." It is this statement that the majority finds harmful.

The majority reasons that because of the statement the jury concluded that Shirley Watson was "alluding to the manner or means by which appellant caused her death," and, inferentially, that the source of this knowledge was the appellant. A closer analysis of the evidence leads to a different conclusion.

First, there has been no showing by appellant that the source of that information was through him. Carla Sellers, appellant's daughter, testified that she learned of her mother's death on October 8, 1974, from various phone calls to Garland, while the hearsay statement was made on October 9, 1974. Four witnesses for the State testified that the deceased's body was found with a washcloth taped over her face. The body was found on October 5, 1974. It requires no stretch of the imagination to infer from this chain of events that the authorities first suspected suffocation as the cause of death and that this information was communicated to Shirley Watson through Carla Sellers after learning of the death through her friends in Garland. The statement in no way connects appellant with the homicide.

Further, the cause of death, as testified to by Dr. Ross Zumwalt, a Dallas County medical examiner, was determined to be acute meperidine intoxication or, more simply, an overdose of Demerol. The evidence revealed that Sellers had been prescribed Demerol and that a supply of the drug was present in his house at the time of his wife's death. The jury could easily have believed that Mrs. Sellers died at her husband's hands through the forced ingestion of Demerol. In view of the other evidence of appellant's guilt, the admission of the hearsay statement was not reversible error.

For these reasons, the judgment should be affirmed.