In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00084-CR


______________________________




RODNEY JEROME ALEXANDER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 28,354-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Rodney Jerome Alexander appeals the revocation of his community supervision. 
Alexander was convicted by a jury of aggravated robbery. The jury assessed his
punishment at ten years' imprisonment and a $10,000.00 fine, but recommended that the
imposition of his sentence be suspended and that he be placed on ten years' community
supervision. The trial court sentenced him accordingly.

 Later, the State moved to have Alexander's community supervision revoked,
alleging he committed six violations of its terms. Alexander pled true to each of the State's
allegations. The trial court found the allegations true, revoked Alexander's community
supervision, and sentenced him to ten years' imprisonment.

 Alexander contends the trial court abused its discretion in revoking his community
supervision instead of adding a condition that he undergo substance abuse treatment. He
also contends the trial court erred in revoking his community supervision based on his
failure to pay community supervision fees, court costs, court-appointed attorney's fees,
and restitution in December 2001 and January 2002. Finally, he contends the trial court
should not have revoked his community supervision based on his failure to complete
required community service hours because there was a fatal variance between the terms
of his community supervision and the State's motion to revoke.

 The decision whether to continue or revoke community supervision is within the trial
court's discretion. Wester v. State, 542 S.W.2d 403, 405 (Tex. Crim. App. 1976); Allen v.
State, 946 S.W.2d 115, 116 (Tex. App.-Texarkana 1997, no pet.). We review the trial
court's ruling for abuse of discretion. See Jackson v. State, 645 S.W.2d 303, 305 (Tex.
Crim. App. 1983); Lopez v. State, 46 S.W.3d 476, 482 (Tex. App.-Fort Worth 2001, pet.
ref'd).

 The trial court cannot revoke community supervision without a showing the
defendant violated a condition of his or her supervision. DeGay v. State, 741 S.W.2d 445,
449 (Tex. Crim. App. 1987); Allen, 946 S.W.2d at 116. When there is sufficient evidence
to support a finding the defendant violated a condition of his or her supervision, the trial
court does not abuse its discretion by revoking community supervision. See Cardona v.
State, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1984); Stevens v. State, 900 S.W.2d 348,
351 (Tex. App.-Texarkana 1995, pet. ref'd).

 The defendant's plea of true, standing alone, is sufficient to support a revocation
order. Cole v. State, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979); Jiminez v.
State, 552 S.W.2d 469, 472 (Tex. Crim. App. 1977); Guajardo v. State, 24 S.W.3d 423,
427 (Tex. App.-Corpus Christi 2000, pet. granted). Proof of a single violation is sufficient
to support revocation of community supervision. O'Neal v. State, 623 S.W.2d 660, 661
(Tex. Crim. App. 1981); Myers v. State, 780 S.W.2d 441, 445 (Tex. App.-Texarkana 1989,
pet. ref'd).

 Alexander first contends the trial court should have continued him on community
supervision with the added term that he undergo substance abuse treatment. After a
hearing on a violation of community supervision, the trial court may continue or modify
community supervision and impose a condition that the defendant be placed in a
substance abuse felony punishment program. Tex. Code Crim. Proc. Ann. art. 42.12,
§ 22(a)(4) (Vernon Supp. 2003). The defendant must not have been convicted of certain
felonies (not relevant here), and the trial court must make an affirmative finding that (1)
drug or alcohol abuse contributed significantly to the commission of the offense or the
violation of community supervision, and (2) the defendant is a suitable candidate for
treatment. Id.

 The record shows that, as part of his community supervision, Alexander served 180
days in the Gregg County jail. Under the terms of his community supervision, he was
required to attend and complete a drug education class within 180 days of his release from
the Gregg County jail. He was also required to attend and complete a substance abuse
evaluation and fully comply with all recommendations of that evaluation.

 Alexander pled true to the State's allegation that he smoked marihuana, stipulated
to the State's evidence, and testified that he smoked marihuana "a couple days" after
being released from the Gregg County jail. This violation is, in and of itself, sufficient to
support the trial court's decision to revoke community supervision. See Cardona, 665
S.W.2d at 493-94; Stevens, 900 S.W.2d at 351.

 Further, the State is correct that, by the terms of his community supervision,
Alexander had available to him avenues by which any substance abuse problem he has
could be evaluated and treated. Rather than availing himself of these opportunities,
however, Alexander testified he used marihuana within "a couple days" of his release from
the Gregg County jail. Under these circumstances, the trial court did not abuse its
discretion in revoking his community supervision.

 Alexander also contends the trial court should not have revoked his community
supervision based on his failure to pay supervision fees, court costs, court-appointed
attorney's fees, and restitution in the two months after he was released from the Gregg
County jail. He contends his testimony shows his failure to pay was not intentional, but the
result of his inability to pay and his inability to find a job despite his efforts to do so.

 But the State did not put on any evidence regarding Alexander's intent other than
his stipulation. It is, therefore, inaccurate to characterize the record as demonstrating the
State's failure to prove its allegation. In addition, Alexander pled true to the State's
allegation. As mentioned previously, a plea of true is sufficient to support a revocation
order. Cole, 578 S.W.2d at 128; Guajardo, 24 S.W.3d at 427. Moreover, Alexander pled
true to two other violations of the terms of his community supervision. As mentioned
previously, proof of a single violation is sufficient to support a revocation order. O'Neal,
623 S.W.2d at 661; Myers, 780 S.W.2d at 445.

 Because of our disposition of these contentions, we find it unnecessary to address
Alexander's final contention that the trial court should not have revoked his community
supervision based on his failure to complete required community service hours. 

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: January 6, 2003

Date Decided: January 30, 2003


Do Not Publish




t weight to give contradictory testimonial evidence because resolution often turns on an evaluation of
credibility and demeanor that the jury is better situated to make. Johnson, 23 S.W.3d at 8. The same holds true for
uncontradicted witness testimony where the credibility of the evidence is challenged by cross-examination. In this case,
several witnesses testified to Glover's admissions of sexual congress with A.H. Each witness was cross-examined. 
Although other people were also present when the admissions were made, Glover did not call them to either refute or
explain the context of prior witnesses' testimonies regarding the admissions. Possible relationships between boys at school
and A.H., even if established, would not negate her contact with Glover. The case rests primarily on the credibility of the
State's witnesses, combined with the jury's understanding of what the phrases "screwed the s__t out of," "had sex with," and
"slept with" meant. 

 A neutral view of all the evidence, both for and against the verdict, demonstrates the proof of guilt was not so obviously
weak it undermined confidence in the jury's determination. The proof of guilt was not greatly outweighed by contrary
proof. The evidence was factually sufficient to support the conviction. Glover's second point of error is overruled.

 In his third and fourth points of error, Glover complains of the admission of hearsay statements made by A.H. Over proper
and timely objection of the defense, Diane was permitted to relate statements made by A.H. during a confrontation between
the two. Glover contends that this testimony was hearsay, not within any exception, and that the trial court erred in
admitting it. 

 Diane's testimony included the following: In May of 1999, A.H.'s parents were separated and living in different residences
in Beaumont. At around one a.m. on May 15 (the early morning after Mother's Day), A.H. sneaked out of her father's
house, and Glover picked her up. A.H.'s mother found out and called Glover to confirm he had picked A.H. up from her
father's. Diane confronted A.H. that same evening. At the time, Diane only knew about the events from the same day. She
told A.H., however, that she had already talked to Glover and that she "knew everything," but wanted to hear it from her
daughter. A.H.'s emotional condition was described as uptight, emotional, then increasingly shaky. This charged
emotional state was coupled with agitated behavior including crying and wringing of hands. Under the pressure of these
circumstances, A.H. revealed the hearsay statements to which her mother testified and of which Glover complains.

 Diane was permitted to testify to the out-of-court statements of A.H. The following exchange took place between the
prosecutor and Diane:

 Q. Was it your intention to confront [A.H.] regarding that situation [sneaking out of the house]?



 A. Yes.



 . . . .



 Q. . . . How did you confront her?



 A. Well, as soon as she came into the living room, I said, "We're going to talk about this. I've already talked to Troy. I
know everything. You're going to get a whipping for sneaking out of your house." I said, "I've already talked to Troy
[Glover]"; so, I didn't want any lies, I didn't want any shrugs of the shoulders, I didn't want to hear, "I don't know." . . . .



 [I told her] "By the way, I've already heard. So, tell me the truth."



 . . . .



 Q. When you told her to tell you what was going on, what had happened, what was the first thing she told you?



 MR. KIMLER [defense counsel]: Objection, Your Honor, it's hearsay, violation of right to confront and cross examine,
as well as due process. 



 THE COURT: Overruled.



 Q. (by Mr. Rodriguez) What was the first thing that she told you after you told her, "You better tell me the truth. I know
everything that's happened"?



 A. The very first thing she said is, "I snuck out of the house last night."



 I said, "No, I want to know everything, [A.H.]."



(At this point, defense counsel requested and was granted a running objection to the testimony regarding hearsay statements
of A.H.)

 Q. What did she say then?



 A. She said, "He picked me up last Sunday."



 Q. Now, she said, "He picked me up last Sunday." At this point you're not talking about Mother's Day anymore, are you?



 A. No.



 Q. She's talking now about the previous Sunday.



 A. Right.



 . . . .



 Q. What was the next thing she told you?



 A. She said, "He took me to his apartment, and we had sex."



 Q. Did she describe anything about anything that happened leading up to having sex?



 A. She said, "We danced, listened to music; and then we had sex."



 And I said, "Where?"



 She said, "On the floor."



 . . . .



 Q. What was the next thing that you asked her?



 A. I said, "Oh, my God, [A.H.]. Was it safe sex?"



 She said, "Yes."



 And I said, "So, what's safe sex?"



 And she said, "Latex, Mom."



 Q. Referring to a condom?



 A. Yes.



 . . . .



 Q. (By Mr. Rodriguez) On the day that you confronted [A.H.] when you found out what had actually happened, on that
day what did she tell you was the truth about [a different] day she was supposedly late from school?



 A. Troy [Glover] had picked her up from school after school, had taken her to his apartment and had sex again and
brought her back home.



 Q. Was it after this that you contacted the Beaumont Police Department?



 A. Yes, sir.



 At trial, the State had argued this testimony should be admitted under either Rule 804(b)(3), as a statement of personal
family history, or under Rule 803(3), as a statement of then-existing mental condition. (4) See Tex. R. Evid. 803, 804. The
trial court allowed all of the hearsay testimony. No requests for limited admissibility of this testimony were made, and no
limiting instructions were given to the jury. On appeal, the State has correctly abandoned Rule 804(b)(3) as a basis for
admission. 

 Rule 803(3) creates an exception to the hearsay rule for a "statement of the declarant's then existing state of mind . . . but
not including a statement of memory or belief to prove the fact remembered or believed . . . ." Tex. R. Evid. 803(3). The
State that the evidence related to A.H.'s emotional state during the confrontation with her mother as well as to her
motivation for continuing acts of disobedience to her parents. These statements go well beyond A.H.'s then-existing
emotional state during the confrontation with her mother. They offer a description of past facts. The only purpose of the
statements in question was to prove Glover had sex with A.H. Evidence that seeks to establish a purported fact
remembered and related in the utterance is specifically excluded from the state of mind exception. Norton v. State, 771
S.W.2d 160, 166 (Tex. App.-Texarkana 1989, pet. ref'd). To the extent the hearsay statement implicates the declarant's
intent, plan, motive, and the like, the statement must relate to future conduct to be undertaken after the statement was made. 
See Jones v. State, 515 S.W.2d 126, 129 (Tex. Crim. App. 1974) (holding hearsay inadmissible under state of mind
exception because statement did not reflect intent or motive for future action, but only discussed preceding events). The
testimony of Diane, relating statements made by her daughter and seeking to establish the truth of facts remembered
regarding past events, is inadmissible under the state of mind exception to the hearsay rule. See Tex. R. Evid. 803(3). 

 The State also argues that the statements of A.H. were admissible as excited utterances. SeeTex. R. Evid. 803(2). It is
immaterial that this particular argument was not pressed at trial. If the trial court's decision is correct on any applicable
theory of law, it will be sustained. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). This is especially true
with regard to the admission of evidence. Id. The admission of evidence is reviewed only for an abuse of discretion. 
Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). The trial court's decision will be affirmed if it is within
"the zone of reasonable disagreement." Id. 

 An excited utterance is not excluded by the hearsay rule, regardless of the declarant's availability, and is defined as "[a]
statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by
the event or condition." Tex. R. Evid. 803(2). This exception has three requirements: (1) the statement must be a product
of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous
and unreflecting, (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity
to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. Sellers v.
State, 588 S.W.2d 915, 918 (Tex. Crim. App. [Panel Op.] 1979). The court need not examine each requirement
independently, but should focus instead on whether their combined effect shows the statement to be sufficiently reliable. 
Id. In discussing the application of this exception, the Court of Criminal Appeals recently reiterated that

 It is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the
startling event; these are simply factors to consider in determining whether the statement is admissible under the excited
utterance hearsay exception. The critical determination is "whether the declarant was still dominated by the emotions,
excitement, fear, or pain of the event" or condition at the time of the statement.



Salazar, 38 S.W.3d at 154 (citations omitted) (quoting McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)).

 The theory of the excited utterance exception is that circumstances may produce a condition of excitement that temporarily
stills the capacity for reflection and produces utterances free of conscious fabrication. 2 Goode, Wellborn & Sharlot, Texas
Practice: Texas Rules of Evidence: Civil and Criminal § 803.3 (2nd ed. 1993). The requirement the exclamation relate to
the occurrence or its cause is not emphasized by the general theory of Rule 803(2). This type of hearsay is deemed reliable,
and therefore admissible, to the extent it is the spontaneous, involuntary product of an excited state of mind. See Parks v.
State, 843 S.W.2d 693, 697 (Tex. App.-Corpus Christi 1992, pet. ref'd). Spontaneity is the primary factor which makes
these statements reliable. De Leon v. State, 500 S.W.2d 862, 867 (Tex. Crim. App. 1973) (citing Fisk v. State, 432 S.W.2d
912, 915) (Tex. Crim. App. 1968)). The fact that they relate to some occurrence other than the startling event itself or its
cause should not make them less reliable. See Bondurant v. State, 956 S.W.2d 762, 765 (Tex. App.-Fort Worth 1997, pet.
ref'd).

 The time elapsed between the crime and the utterance is also not a critical factor. The key is not whether there was an
opportunity for reflection between the crime itself and the utterance in question. The critical element is the relationship
between the utterance and the triggering event. A statement that is simply a narrative of past events or acts, as
distinguished from a spontaneous utterance, does not qualify as an excited utterance no matter how soon after the event it is
made. First Southwest Lloyds Ins. Co. v. MacDowell, 769 S.W.2d 954, 959 (Tex. App.-Texarkana 1989, writ denied). The
only requirement concerning time is the necessity that the statement be made while in a state of excitement caused by the
startling event. City of Dallas v. Donovan, 768 S.W.2d 905, 908 (Tex. App.-Dallas 1989, no writ). The circumstances
must show that it was the event speaking through the person and not the person speaking about the event. First Southwest,
769 S.W.2d at 959.

 The startling event that triggers the excited utterance need not be the crime itself, as long as the statement produced by the
event is probative of an issue in the case. See Tex. R. Evid. 402 (stating all relevant evidence admissible); see also Hunt v.
State, 904 S.W.2d 813, 815 (Tex. App.-Fort Worth 1995, pet. ref'd). In Hunt, an eleven-year-old girl was sexually
assaulted by her father's friend. Three months later, she saw a television show about a young rape victim who had been
stabbed by her attacker. Id. at 815. The girl began to cry uncontrollably. Id. When her mother questioned why she was
crying, the girl told her mother about the sexual assault. Id. At trial, the victim testified that on seeing the news program,
she had become fearful that she might be pregnant. Id. at 816. The victim's mother was also permitted to testify, over
objection, to the contents of the conversation. Id. The court held that the shock of seeing the television news program
triggered the victim's out-of-court statements, and her fear of pregnancy was startling enough to produce a state of nervous
excitement so as to render her subsequent remarks spontaneous. Id. at 816-17.

 There are similarities between Hunt and the present case, but the differences predominate. Here, A.H. revealed the
existence of a statutory sexual assault under the stress induced by conditions completely independent of the alleged crime
itself. The most obvious distinctions are the age of the declarant (fourteen versus eleven), and the fact that A.H. was
unavailable to testify. The stressful event which triggers the statements is also distinguishable. A.H.'s stress was induced
by her mother's questions in the context of a confrontation. The confrontation itself was intentionally stressful, calculated
to elicit a confession from A.H. about sneaking out of her father's house. As indicated by Diane, A.H. was dominated by
the emotions, excitement, and fear of disappointing her mother, combined with the threat of receiving a "whipping" for
sneaking out. In Hunt, the declarant's stress arose spontaneously in response to an independent and otherwise nonstressful
experience. The distinction here is not unlike the distinction between someone blurting out their complicity in a crime
when asked why they are upset and someone breaking down and confessing to a crime under the pressure of interrogation. 
The former is spontaneous, the latter is not.

 In this case, the question is whether the combined effect of the three Sellers factors suggest that A.H. was not likely to
engage in conscious reflection or fabrication before answering her mother's questions. To answer this question, we must
examine the totality of the circumstances within which the statements were made. The reliability of an excited utterance
must be determined by considering the overall effect of the three criteria as indicia of reliability. See Sellers, 588 S.W.2d at
918. A.H. does not respond in a spontaneous fashion, but responds directly to what she believes her mother was asking. (5) 
When she confronted A.H., Diane said she had already talked to Glover, so she knew everything, but wanted to hear it from
A.H. When A.H. started to talk about the previous night, Diane stopped her and said, "No, I'm talking everything." 
According to the testimony, it is at this point that A.H. began to talk about the sexual encounter from the prior week. Diane
was surprised by this revelation, for she had not been aware of the prior encounter. The State argues the mother's surprise
at this point shows the responses of A.H. are spontaneous. The fact that her mother was referring to the previous night, and
was surprised by what A.H. said about the previous week, is irrelevant. The spontaneity of the statements cannot be
measured by the expectations of the listener; only the speaker's perspective is important in determining spontaneity.

 In this case, Diane's questions were calculated to elicit information about past events and activities, even if the specific
data elicited was unanticipated. Responses to this type of questioning are not spontaneous. Responses to this type of
questioning are normally considered reflective narratives of past events. This is the qualitative difference between the
circumstances in this case compared to those in Hunt. There, the questions were generalized, meant to ascertain how the
girl was feeling and why she was crying. Here, Diane's questions were specifically intended to elicit details of past events
of which the questioner was presumed to be already aware. In Hunt, the younger child's age of eleven makes her less likely
to consider the consequences of her answers. The child in Hunt was also not placed under any threat of punishment. Here,
the older A.H. has already been placed under a disciplinary threat, making her much more likely to consider the
consequences of her answers before making them. Unlike Hunt, the circumstances in this case suggest reflective
consideration and allow an opportunity for conscious fabrication.

 The statements of A.H. comprise a reflective, narrative account of past events. They were made in response to direct,
specific questions that were calculated to elicit the type of responses given, even though the contents of the responses were
unanticipated. A statement that is simply a narrative of past acts or events is distinct from an excited utterance and does not
qualify under Rule 803(2) regardless of how soon after the event it is made. First Southwest, 769 S.W.2d at 959
(citingGulf, C. & S.F.R. Co. v. Moore, 69 Tex. 157, 6 S.W. 631 (1887)). A.H. may have been upset, but that does not make
her statements excited utterances. Her age and the threat of punishment make the statements more likely to be reflective
and premeditated. The danger of allowing expansion of the excited-utterance exception to include this type of information
is that it will become as broad and indeterminate as the former res gestae exception. (6) 

 The statements of A.H. do not fall within the excited-utterance exception to the hearsay rule. We cannot say the statements
in issue were spontaneous and unreflecting, or made without the opportunity to contrive or misrepresent. See Sellers, 588
S.W.2d at 918. This conclusion is not within the zone of reasonable disagreement. 

 The State also contends that the statements of A.H. are admissible as statements against "social" interest. See Tex. R.
Evid. 803(24); Robinson v. Harkins & Co., 711 S.W.2d 619, 621 (Tex. 1986). The rule applies to a statement which, at the
time made, so far tends "to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in
declarant's position would not have made the statement unless believing it to be true." Tex. R. Evid. 803(24). Whether a
statement is in fact against the interest of the declarant must be determined from the circumstances of each case. Cofield v.
State, 891 S.W.2d 952, 956 (Tex. Crim. App. 1994) (discussing statement against penal interest). To be admitted on the
basis it would subject the declarant to disgrace, the statement must be "in the context of the declarant's social interests," and
must be against such interests at the time it was made. Burks v. State, 40 S.W.3d 698, 701 (Tex. App.-Waco 2001, pet.
ref'd) (citingOwens v. State, 916 S.W.2d 713, 718 (Tex. App.-Waco 1996, no pet.); Bell v. State, 877 S.W.2d 21, 24 n.2
(Tex. App.-Dallas 1994, pet. ref'd)).

 The statements of A.H. contain a confession of sexual relations between a fourteen-year-old girl and a twenty-six-year old
man. Examining the circumstances, a reasonable person in A.H.'s position would have known that her statements would
subject her to disgrace in the eyes of her mother. That A.H. recognized and understood this is illustrated by the fact that
she took pains to hide her conduct from her parents by sneaking out of her father's house and by keeping her liaison a
secret. She made the statements reluctantly, and only when confronted by the possibility that her mother already knew the
"secret." The audience was A.H.'s mother. A.H. was fourteen and still lived with her mother, so A.H. was still subject to
her mother's authority and control. The risk to A.H. of being untruthful was that certain punishment would be
compounded, because she was told that her mother already "knew everything." Considering all of the circumstances, we
conclude that the statements of which Glover complains fall within the scope of Rule 803(24), in that they would so far
tend to subject the declarant to disgrace that a reasonable person in her position would not have made these statements
unless believing them to be true. Tex. R. Evid. 803(24). 

 We cannot say that the admission of this evidence was error amounting to an abuse of discretion. See Salazar v. State, 38
S.W.3d 141, 153-54 (Tex. Crim. App. 2001). Glover's third and fourth points of error are overruled.

 In his fifth point of error, Glover argues the trial court erred in admitting the out-of-court statements of A.H. in violation of
Glover's right to confront witnesses under the United States and Texas Constitutions. 

 The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be
confronted with the witnesses against him." U.S. Const. amend. VI. Admission of hearsay evidence against a criminal
defendant implicates the Confrontation Clause of the Sixth Amendment because the defendant is denied the opportunity to
confront the out-of-court declarant. U.S. Const. amend. VI.; Guidry v. State, 9 S.W.3d 133, 149 (Tex. Crim. App.
1999),cert. denied, 531 U.S. 837 (2000) (citing Ohio v. Roberts, 448 U.S. 56, 63 (1980)). In considering this constitutional
issue, the decision of the trial court is reviewed de novo. Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). 
Not all hearsay violates the Confrontation Clause. A hearsay statement is per se reliable for Confrontation Clause purposes
if it falls within a firmly rooted exception to the hearsay rule. Guidry, 9 S.W.3d at 149-50 (citing White v. Illinois, 502 U.S.
346, 356 (1992)). Admission of evidence under a firmly rooted hearsay exception satisfies the constitutional requirement
of reliability because of the weight of longstanding judicial and legislative experience in assessing trustworthiness of
certain types of out-of-court statements. Idaho v. Wright, 497 U.S. 805, 817 (1990).

 The hearsay exception for a statement against social interest, a statement that tends to subject the declarant to hatred,
ridicule, or disgrace, is not a firmly rooted hearsay exception. Rule 803(24) was promulgated in 1985, and became
effective September 1, 1986. (7) Before that date, Texas law did not recognize an exception for a declaration against social
interest. See 2 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 803.29
(2d ed. 1993 & Supp. 2001); see also David A. Furlow and Lisa H. Pennington, Determining What Types of Hearsay
Disparage A Declarant's "Social Interest": An Innovation for Texas Evidence Law, 48 Tex. B.J. 1058, 1062 (1985). Since
the rule was adopted, only a handful of Texas appellate courts have considered evidence admitted pursuant to this
exception. An exception for declarations against social interest has not existed long enough in Texas, nor is there any
significant judicial or legislative experience in assessing the trustworthiness of statements admitted under it, for such
declarations to be considered per se reliable for Confrontation Clause purposes.

 Although the evidence in this case does not fall within a firmly rooted exception to the hearsay rule, it may nonetheless be
sufficiently reliable for Confrontation Clause purposes if it has "particularized guarantees of trustworthiness." Guidry, 9
S.W.3d at 149 (citing Wright, 497 U.S. at 816; Roberts, 448 U.S. at 66)). The central concern of the Confrontation Clause
is to ensure the reliability of evidence against a defendant by subjecting it to rigorous testing in an adversarial proceeding
before the trier of fact. Lilly v. Virginia, 527 U.S. 116, 124-25 (1999) (quoting Maryland v. Craig, 497 U.S. 836, 845
(1990)). Some statements that do not fit into a firmly rooted hearsay exception may have other particularized guarantees of
trustworthiness that serve as a proxy for cross-examination, allowing the statements to be admitted without offending the
confrontation rights guaranteed to a criminal defendant. 

 The trustworthiness of hearsay evidence must be evaluated in light of the totality of the circumstances, considering only
those circumstances that surround the making of the statement and that render the declarant particularly worthy of belief.
Guidry, 9 S.W.3d at 150. Other evidence admitted at trial cannot be considered in determining trustworthiness. Id. The
trustworthiness requirement is satisfied if cross-examination would be of only "marginal utility." Muttoni v. State, 25
S.W.3d 300, 307 (Tex. App.-Austin 2000, no pet.) (citing Lilly, 527 U.S. at 134). Other evidence admitted at trial cannot
be used to corroborate the veracity of the hearsay or to support a claim that the statement bears the requisite guarantees of
trustworthiness. Muttoni, 25 S.W.3d at 307(citingLilly, 527 U.S. at 135 (holding the State may not bootstrap on the
trustworthiness of other evidence)). As the court in Guidry stated, "[T]here must be 'an affirmative reason arising from the
circumstances in which the statement was made' which provides a basis for rebutting the presumption that a hearsay
statement is not reliable." Guidry, 9 S.W.3d at 150 (quoting Wright, 497 U.S. at 819)).

 In this case, the same factors that bring the statements within the hearsay exception also guarantee reliability under the
Confrontation Clause. As shown above, the conditions under which the statements were made and the person to whom
they were made provide a basis for rebutting the presumption of unreliability. A.H.'s affirmative conduct in trying to
conceal her sexual relationship with Glover acknowledged that she knew her statements would subject her to disgrace in
the eyes of her mother. This provides a basis for the jury to assess the credibility of her statements. The defense was also
able to test the evidence by offering an alternative explanation for the statements. Glover's fifth point of error is overruled. 

 The judgment of the trial court is hereby affirmed.





 Ben Z. Grant

 Justice



Date Submitted: October 30, 2002

Date Decided: October 31, 2002



Publish

1. Evidence conflicted as to Glover's precise age, but all witnesses put his age between twenty-six and twenty-eight at the
time of the offense.

2. By the time of the trial, both A.H. and her father had died. The circumstances of their deaths were not in issue at trial.

3. She stated on direct examination that Glover admitted he "had sex with" A.H., but on cross- examination allowed that
the phrase may have been "slept with." Glover urges on appeal that this shows the testimony is not credible. The jury
determines the credibility of the evidence, not the appellate court. See Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim.
App. 1984).

4. A. H. was over age twelve, so the State could not offer her statements through an outcry witness under Tex. Code Crim.
Proc. Ann. art. 38.072 (Vernon Supp. 2002). Even if she been twelve or younger, A.H. was unavailable to testify, so the
State would have been forced to find an alternative basis for admitting the hearsay statements.

5. This is distinct from Hunt v. State, 904 S.W.2d 813, 815 (Tex. App.-Fort Worth 1995, pet. ref'd), where the question was
generalized and did not anticipate any particular response.

6. See notes 2 through 5 and accompanying text in 2 Goode, Wellborn & Sharlot, Texas Practice: Texas Rules of
Evidence: Civil and Criminal § 803.3 (2nd ed. 1993), for criticism of the nebulous res gestae formulation.

7. Although a similar formulation was proposed by the U.S. Supreme Court, Congress deleted the social interest language
from the equivalent Federal Rule of Evidence 804(b)(3). See H.R. Rep. No. 93-650 at 7089 (1974), reprinted in 1974
U.S.C.C.A.N. 7075, 7089. Federal law still recognizes no hearsay exception for statements against social interest. Several
states, including California, have recognized a social interest exception. See, e.g., Cal. Evid. Code § 1230 (2001); Wis.
Stat.§ 908.045(4) (2001). Other states have considered and rejected the social interest exception. See, e.g., Heddings v.
Steele, 526 A.2d 349, 352-53 (Pa. 1987).