COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| PEDRO LOPEZ, | § | No. 08-16-00239-CR |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 120th District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC # 20130D05658) |
| | § | |

## **O P I N I O N**

Pedro Lopez appeals his conviction for indecency with a child. The appeal contends that the trial judge erred in (1) admitting over hearsay objections several phone text messages, and (2) failing to grant a mistrial for improper jury argument. Finding neither ground meritorious, we affirm the conviction below.

## BACKGROUND

A jury convicted Appellant of indecency with a child by contact. The indictment alleged that Appellant with the intent to arouse or gratify his sexual desire intentionally or knowingly engaged in sexual contact with a child by touching her genitals. The child was twelve years old at the time.

In summary, the evidence at trial showed that Appellant and his ex-wife Estela, had two children together, who we will refer to as I.L. and J.L.[1] The couple were separated for most of their ten-year marriage. The children lived with Estela, but they would spend nights at Appellant's residence every two weeks or so. Appellant remarried in February 2013.

The criminal charge arises out of the events in the early morning hours of Sunday, June 2, 2013. On Friday, Estella dropped I.L. and J.L. off at Appellant's sister's house. The sister hosted a party on Saturday night. Following the party, I.L. and J.L. went to Appellant's house. The girls slept in one of the home's three bedrooms. Appellant and his new wife had their own bedroom, and two of their other children were in the third room. I.L. and J.L. were sleeping together on a twin bed. The bed was up against a wall, and I.L. was sleeping next to the wall.

I.L. testified that she awoke when she felt the blankets move on the bed. The light was on, and Appellant was fixing bed covers, which was unusual. She went back to sleep, but awoke when she felt Appellant lay down next to her. He was lying on his back and side between the sisters. He put his arm around I.L. and asked if he could sleep with her. He then then put his hand on her stomach under her shirt and began to rub. His hand then slide beneath her underwear and down towards, and onto her vagina. I.L. testified that he was breathing heavily at the time.

He stopped after a minute or two and asked if he could stay with her. She declined and used an injured leg as an excuse (she had actually hurt her leg a week earlier). He then started to pull her pants down, but she pulled his hand away and turned her backs towards him. He began to apologize and urged her not to tell her mother. She eventually promised to keep it a secret to get him to leave. He then stated that he would get some liniment for her leg. When he returned with the liniment, he wanted to put it on, but she insisted, and refused his advice to pull off her pajama

---

[1] We choose to use an alias to identify the victim and her sister to protect their identity. *Cf*. TEX.R.APP.P. 9.8 (requiring identification of children by means of initials or fictitious names in parental rights and juvenile court cases).

2

bottoms. When he left the room, she phoned her mother. While on phone, Appellant came back into the room to check on her, and she hid the phone under a pillow.

As we explain in more detail below, I.L. began to text her mother who was by then en route to Appellant's residence. I.L.'s mother arrived with sheriffs' deputies shortly thereafter. I.L., Appellant, and Appellant's new wife all gave statements to an investigator that morning.

In his defense, Appellant's new wife testified that I.L. had complained of injuring her leg, and that Appellant had her locate the liniment that night. She had walked by the girl's bedroom that night and saw Appellant talking to I.L. as she was complaining about her leg. Appellant was hugging her and telling her not to cry, all related to her leg pain. I.L.'s sister testified at trial that she only recalled that Appellant was in the room one time during the night and stroked her hair as he said how much he loved the girls. Appellant also presented testimony about the size of the twin bed from which his counsel argued that it would have been difficult, if not impossible, for Appellant to have gotten between the two girls and done the things he was accused of without waking both sisters.

After a lengthy deliberation, the jury found Appellant guilty of the single count of indecency with a child. Based on the jury verdict from the punishment phase, the trial court sentenced Appellant to two years, nine months confinement and assessed a $4,000 fine. Appellant urges two issues on appeal which we address in turn.

## ADMISSION OF TEXT MESSAGES

Appellant's first issue challenges the admission of several text messages exchanged between I.L. and her mother on the morning in question. I.L. first telephoned her mother once Appellant left the room. She recounted to her mother what Appellant had done. After that call ended, and as the mother was driving towards Appellant's house with the police, the two

3

exchanged a series of messages typified by the following which we reproduce as they appeared on the phone screens:

**I.L.:** Mom I think he is sleeping in da living room cause he said [his new wife] is mad at him

                                        **Mother**:  Ok Mija almost there

**I.L.:**  he might see us walk out

                                        **Mother:**  Pits ok

. . .

**I.L.:** Where r u??

**I.L.:** ??? Where r u

                                        **Mother:** Almost there mommas

**I.L.:** Ok hurry

**I.L.:**  Do u know which house and I think he is in da living room

**I.L.:** Hurry

**I.L.:**  I don't think we will make it outside cause he in living room  . . .

**I.L.:** ????? Answer plzzzz

                                        **Mother:**  Ok. Hold on. Exiting the freeway. Almost there

**I.L.:**  Bearly

**I.L.:** Mom plzz hurry

                                        **Mother:** Yes. Mija wait

**I.L.:**  Ok

                                          **Mother:**  Is ir sister awake

**I.L.:**  Yes kinda she got ready

                                        **Mother:**  Has he gone into the room and touched you again

 . . .

**I.L.:**  And no he hasn't

4

**I.L.:** Thank god

                                        **Mother:** OK

                                        **Mother:** Almost there

**I.L.:** R u almost here

**I.L.:** What if he sees us come out

**I.L.:** Of the room

**I.L.:** Wat do we do

                                        **Mother:** Mija don't get scared. I have
                                        the cops here outside

**I.L.:** U do??? I luv daddy so much
don't want him to go to jail but still
was wrong wat he did do we go now

                                        **Mother:** He will knock

**I.L.:** ???

I.L.: The cop

                                        **Mother:** No Mija. Don't worry

**I.L.:** Mom so scared[2]

Appellant objected to the exhibits reflecting these text messages as hearsay. The State urged below

that the messages were admissible under the exited utterance exception to the hearsay rule.

### Standard of Review and Controlling Law

Hearsay is defined as a statement, other than one made by the declarant while testifying at

trial or a hearing, offered to prove the truth of the matter asserted. TEX.R.EVID. 801(d). Hearsay

testimony is inadmissible except as provided by statute or the rules of evidence. TEX.R.EVID. 802.

While the State does not contest that the text messages meet the classic definition for hearsay, it

---

[2] The text messages were introduced through twenty-five screen shots from Estela and I.L.'s phones. Appellant concedes that the State established the authorship of the text messages.

nonetheless claims the trial court correctly concluded they meet the "excited utterance" exception under TEX.R.EVID. 803(2).

A statement is admissible as an exception to the hearsay rule when it relates to a startling event made while the declarant was under the stress of excitement that it caused. TEX.R.EVID. 803(2). The statement is deemed trustworthy "because it represents an event speaking through the person rather than the person speaking about the event." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). No single principle governs the admissibility of evidence under the excited utterance exception; rather, each case is considered on its own facts. *Arzaga v. State*, 86 S.W.3d 767, 774-75 (Tex.App.--El Paso 2002, no pet.). The Court of Criminal Appeals has, however, set forth a three-part test for determining whether a statement qualifies as an excited utterance in *Sellers v. State*, 588 S.W.2d 915, 918 (Tex.Crim.App. [Panel Op.] 1979). Under *Sellers*, a statement meets the requisite indicia of reliability when: (1) it is the product of an occurrence startling enough to produce a state of nervous excitement rendering the utterance spontaneous and unreflecting; (2) it is made before there is time to contrive and misrepresent while the excitement produced by the startling event still dominates the reflective powers of the mind; and (3) it relates to the circumstances of the event preceding it. *Id.* at 918. The critical factor is "whether the declarant is still dominated by the emotions, excitement, fear, or pain of the event." *Arzaga*, 86 S.W.3d at 775, *citing Lawton v. State*, 913 S.W.2d 542, 553 (Tex.Crim.App. 1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). As a reviewing court, we must determine whether the statement was made "'under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" *Zuliani*, 97 S.W.3d at 596, *quoting Fowler v. State*, 379 S.W.2d 345, 347 (Tex.Crim.App. 1964).

6

We review a trial court's determination whether evidence is admissible under the excited utterance exception to the hearsay rule for an abuse of discretion. *Wall v. State*, 184 S.W.3d 730, 743 (Tex.Crim.App. 2006)("[A]ppellate courts review a trial court's determination of whether evidence is admissible under the excited utterance exception to the hearsay rule only for an abuse of discretion"); *Zuliani*, 97 S.W.3d at 595 ("The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion."). We consider whether the trial court's decision was so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008). Moreover, "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Page v. State*, 213 S.W.3d 332, 337 (Tex.Crim.App. 2006), *quoting Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App. 2004).

Finally, evidentiary errors generally constitute non-constitutional error which we review under TEX.R.APP. 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex.Crim.App. 2007). We must disregard evidentiary error which does not affect an appellant's substantial rights. TEX.R.APP.P. 44.2(b).

## Application

The gist of Appellant's claim is that the State did not present evidence to establish which hearsay exception applied to the text messages. We disagree. From the colloquy before the trial court, it is clear to us that the State's attorney was relying on the excited utterance exception. Additionally, the record contains ample references from which the trial court could have concluded that I.L. was under a heightened emotional state during the text exchange. When I.L. made the initial phone call to her mother at 2:30 am, she testified that she was "scared" and crying a little

7

bit. Her mother also described her as "very scared, very confused, trembling. You could hear it on her voice that she was very scared." The text messages themselves demonstrate the child's continued emotional state. She continually asks her mother to hurry, and she is anxious about Appellant's location in the house, and how she can leave without being seen. Upon his arrival, the responding sheriff's deputy described I.L. as "extremely pale, not normal." Her eyes were very watery and reddish, and she appeared "visibly shaken." When I.L. finished talking to the sheriff's deputy, she ran to her mother and could not stop crying; according to the mother she was "[s]haking, just trembling. She was just scared like a little kid would." The mother described herself as "very angry" "very upset" "scared" "worried" "sad" and "mostly angry with what he made them go through."

The texts are also in close time proximity to the events they describe. In fact, for the most part, the texts reflect the "real time" of the events they describe.[3] They are largely a series of urgings of the child for the mother to hurry, and the mother's reply that she is on her way. I.L. generally references what Appellant did to her earlier, but even those statements were within thirty minutes of the incident.[4] The statements all relate either to the incident, how the sisters could get out of the house, and the mother's location. Nor do we ascribe any significance to the fact that I.L.'s statements were made in a text format, as distinct from a verbal communication. Texting

---

[3] The parties do not address whether some or all of the text messages might meet another hearsay exception--present sense impression. A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. TEX.R.EVID. 803(1). Some of the dialogue between the mother and daughter describes events as they unfolded. *Cf. Reyes v. State*, 314 S.W.3d 74, 78 (Tex.App.--San Antonio 2010, no pet.)(holding that statements made by 911 caller regarding a person limping and needing an ambulance were admissible under the present sense exception to hearsay rule); *Child v. State*, 08-14-00108-CR, 2016 WL 5121989, at *4 (Tex.App.--El Paso Sept. 21, 2016, no pet.)(holding that 911 calls describing the events as they occurred or immediately were admissible). Additionally, the State notes in its brief that the statements were not offered as outcry statements under TEX.CODE CRIM.PROC.ANN. art 38.072 (West Supp. 2017) because notice was not properly given under that statute. We express no opinion on whether some or all of the text messages might have meet other exceptions had they been properly raised.

[4] The first phone call was made around 2:30 am and the text messages begin at 2:50 am and end around 3:15 am.

8

has become ubiquitous in the modern day as a substitute for oral communications. *See Commonwealth v. Mulgrave*, 33 N.E.3d 440, 448 (Mass. 2015)(noting that telephone text messages are a unique form of written communications that allow for instant communication in much the same way as oral communications and are often a substitute for oral expression).

In sum, based on the record we cannot conclude the trial court erred in admitting the text messages under the exited utterance exception. *Cf Cook v. State*, 199 S.W.3d 495, 498 (Tex.App.--Houston [1st Dist.] 2006, no pet.) (911 call from witness who sounded agitated, was very upset, and spoke very quickly was held admissible under excited utterance exception); *Campos v. State*, 186 S.W.3d 93, 99 (Tex.App.--Houston [1st Dist.] 2005, no pet.)(911 call from complaining witness who was still dominated by emotions of the claimed attack was held admissible); *Cortez v. State*, No. 07-02-00361-CR, 2003 WL 21664888 at *3 (Tex.App.--Amarillo July 16, 2003, no pet.)(not designated for publication)(adult victim's statements shortly after sexual assault were admissible as excited utterance when she was described as "crying," "shaking," "upset," "tearful," "nervous," "anxious," "scared," "emotional," and "hysterical").

Moreover, even were the text messages inadmissible, their admission would not constitute harmful error. For the most part, the text messages all relate to the mother's progress towards arriving at Appellant's house. While they contain some reference to the crime itself, explicit discussion of how Appellant touched I.L. was admitted through other testimony. I.L. herself described the touching in detail. I.L.'s mother recounted of the substance of the first phone call and exactly how I.L. described the inappropriate touching in that call. And more generally, the sheriff's deputy recounted what I.L. told him about the inappropriate touching. Appellant does not assign any error to the admission of that testimony on appeal. In substance, the text messages add little or nothing to the description of the crime. The improper admission of evidence does not

9

constitute reversible error if the same facts are shown by other evidence which is not challenged. *Leday v. State*, 983 S.W.2d 713, 717 (Tex.Crim.App. 1998). And here, the substance of the only damaging portions of the text messages were already admitted through other testimony. *Cf. Duncan v. State*, 95 S.W.3d 669, 672 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd)(improper admission of outcry testimony was harmless where similar testimony was admitted through victim, pediatrician, and medical records); *Poole v. State*, 974 S.W.2d 892, 899 (Tex.App.--Austin 1998, pet. ref'd)(holding any error in admitting mother's outcry testimony was cured by admission of the victims' testimony about the same matter).

At most, Appellant contends that the text messages lend credence to the child victim's story. Whatever additional support the actual texts added over the child's, the mother's, and the sheriff's testimony about the same events was negligible. We overrule Issue One.

## CLOSING ARGUMENT

In his second issue, Appellant argues that the prosecutor engaged in improper argument during closing arguments, for which the trial judge should have granted a mistrial. The complained of argument by the State's prosecutor was as follows:

> PROSECUTOR: So she's talking about how he came in with Ben-Gay and washed his hands. I know that some of you are married, and I know that some of you have kids. If your spouse was accused of indecency with a child, molesting one of your children, wouldn't that be an important fact to remember?
>
> [DEFENSE COUNSEL]: Objection, Your Honor. Placing the jurors in the place of the parties.
>
> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: Ask for a mistrial.
>
> THE COURT: Denied.
>
> [DEFENSE COUNSEL]: Ask for an instruction to the jury.
>
> THE COURT: Members of the jury, disregard the last statement.

10

Appellant argues that the prosecutor improperly asked the jury to place themselves in the shoes of the parties.

## Standard of Review and Applicable Law

The primary purpose of closing argument is to assist the jury's analysis of the evidence so that they reach a just and reasonable verdict based only on the evidence admitted at trial. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). Proper jury argument includes: (1) summation of the evidence presented at trial, (2) reasonable deductions drawn from that evidence, (3) answers to the opposing counsel's argument, or (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000), *citing McFarland v. State*, 845 S.W.2d 824, 844 (Tex.Crim.App. 1992). A prosecutor may not, however, ask jurors to place themselves in the shoes of the victim, or in the shoes of others affected by the offense. *See Ayala v. State*, 267 S.W.3d 428, 435 (Tex.App.--Houston [14th Dist.] 2008, pet. filed); *Nickerson v. State*, 478 S.W.3d 744, 762 (Tex.App.--Houston [1st Dist.] 2015, no pet.). In doing so, the prosecutor essentially invites the jury to abandon their objectivity. *Brandley v. State*, 691 S.W.2d 699, 712 (Tex.Crim.App. 1985)

In determining whether a prosecutor's statements were improper, we consider the remarks in the context in which they appear, examining the "entire argument, not merely isolated sentences." *Robbins v. State*, 145 S.W.3d 306, 314-15 (Tex.App.--El Paso 2004, pet. ref'd), *citing Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd); *see also Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988).

Appellant's precise complaint is that the trial court erred in failing to grant a mistrial. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004), *quoting Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). We

11

review the failure to grant a mistrial based on an improper jury argument for an abuse of discretion. *Hawkins*, 135 S.W.3d at 76-77. A mistrial is only appropriate for "highly prejudicial and incurable errors." *Simpson v. State,* 119 S.W.3d 262, 272 (Tex.Crim.App. 2003), *quoting Wood v. State*, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000). "In reviewing a trial court's ruling on a motion for mistrial, an appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App. 2007).

In determining whether the trial court abused its discretion by denying a motion for mistrial based on an improper jury argument, we apply the so-called "*Mosley*" test, and balance the following three factors: (1) the severity of the misconduct (the prejudicial effect of the prosecutor's remarks); (2) the efficacy of any cautionary instruction by the judge; and (3) the certainty of conviction absent the misconduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998); *see also Archie*, 221 S.W.3d at 700 (noting that whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis, but is not itself a harm analysis under TEX. R. APP. P. 44.2); *Hawkins,* 135 S.W.3d at 77.

### Application

We reject Appellant's claim under the *Mosely* test. First, although the trial court sustained the objection at trial, we cannot conclude the argument demonstrated any severity of misconduct. In context, the prosecutor asked the jury to assess the credibility of a witness. Appellant's new wife testified at trial and related several factual matters that apparently were not contained in her original police statement. The State challenged her credibility on cross examination by developing a list of some twenty-two facts she testified to at trial that were not included in her statement. The reference in the argument to washing off the liniment was among those items. The prosecutor was essentially arguing that a reasonable person in a similar position would have believed the fact to

12

be important enough to have related it to the police. That argument is far different from the evil of having a jury place themselves in the shoes of a victim or the victim's family. Although cloaked in verbiage suggesting the jury put themselves in another's shoes, the substance of the argument really asked the jury to evaluate the evidence admitted at trial. *Cf. Linder v. State,* 828 S.W.2d 290, 303 (Tex.App.--Houston [1st Dist.] 1992, pet. ref'd)(prosecutor's argument asking jurors to imagine what it was like to be victim was summation of evidence before jury, was more focused on defendant's actions and victim's reactions, not jurors themselves, and as such, was not improper); *Marshall v. State*, 12-14-00368-CR, 2016 WL 3703187, at \*9 (Tex.App.--Tyler July 12, 2016, pet. ref'd)(not designated for publication)("Here, the State was simply encouraging the jurors to use their common sense and reason to evaluate the significance of [a witness's] actions under the circumstances."); *Hernandez v. State*, 08-98-00016-CR, 2001 WL 9929, at \*6 (Tex.App.--El Paso Jan. 4, 2001, pet. ref'd)(not designated for publication)("Here, the prosecutor did not ask the jurors to abandon their objectivity by placing themselves in the officers' shoes; rather, the jury was asked to analyze whether or not the officers' actions were reasonable.").

Under the second *Mosely* factor, the trial court instructed the jury to ignore the comment. In the absence of evidence to the contrary, we presume that the jury followed that instruction. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000)("In most instances, an instruction to disregard the remarks will cure the error."); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998)(noting same); *Castruita v. State*, 08-16-00030-CR, 2018 WL 3629382, at \*14 (Tex.App.--El Paso July 31, 2018, no pet. h.)(not designated for publication)(noting same).

As to the third *Mosely* factor, we might agree that this was a close case on guilt/innocence. Like many cases of this type, the jury must choose between the victim's and perpetrator's version of the facts--often without any other eyewitnesses. Appellant's version of events was mostly

13

presented through his new wife. The complained of portion of the prosecutor's argument related to her credibility. Yet it only addressed two of the twenty-two statements that the State claimed impaired her credibility. Standing alone, the argument was not the kind of extremely prejudicial or manifestly improper error that only a new trial can cure. *Nickerson v. State*, 478 S.W.3d 744, 762 (Tex.App.--Houston [1st Dist.] 2015, no pet.)(asking the jurors to consider their feelings if the victim had been their child by itself did not merit a new trial); *Hawkins*, 135 S.W.3d at 77 ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.").

We therefore hold that the trial court acted within its discretion in denying Appellant's motion for mistrial based on that single remark. We overrule Appellant's second issue and affirm the conviction below.

August 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

14